Andrew Steven **CARDIEL**,
Petitioner–Appellant,

v.

Jim **BRITTIAN**, Superintendent of the
Limon Correctional Facility,
Respondent–Appellee.

No. 91SA348.

Supreme Court of Colorado,
En Banc.

July 20, 1992.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for petitioner-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., John August Lizza, First Asst. Atty. Gen., Yvonne E. Scott, Asst. Atty. Gen., Denver, for respondent-appellee.

Justice LOHR delivered the Opinion of the Court.

Andrew Steven Cardiel appeals from the dismissal of his petition for habeas corpus relief by which he sought release from incarceration based on the contention that he had fully served the sentences imposed on him. We reverse and remand for further proceedings.

I.

The parties are in agreement regarding most of the critical facts surrounding this controversy. It is the legal effect of these

facts that the parties dispute. On March 1, 1985, appellant Cardiel was convicted in Eagle County District Court of second-degree sexual assault[1] and sentenced to the custody of the Department of Corrections (DOC) for a term of five years plus one year of parole. On November 4, 1986, the Colorado State Board of Parole (parole board, or board) issued a Notice of Parole Board Action by which it noted that the board had paroled the appellant to a Fremont County detainer for "1 year mandatory," subject to certain special conditions, and indicating a projected release date of January 30, 1987. On November 13, 1986, Cardiel was sentenced by the Fremont County District Court to the custody of the DOC for a term of four years "plus up to five years of parole" as a result of his conviction for possession of contraband in the first degree,[2] the offense that was the subject of the Fremont County detainer. The court specified that the latter sentence was to be served consecutively to any sentence then being served by Cardiel.

On July 17, 1991, Cardiel petitioned the Lincoln County District Court for a writ of habeas corpus directed to the superintendent of the Limon correctional facility, in which he was incarcerated, contending that he had fully served both sentences. He represented himself throughout the proceedings. The court issued a writ ordering the superintendent to show cause why Cardiel was not entitled to immediate release, and the superintendent responded. *See* § 13–45–101, 6A C.R.S. (1987). The court held a hearing at which the superintendent was represented by an attorney from the office of the Colorado Attorney General, who participated by telephone. Cardiel presented the Notice of Parole Board Action indicating that he had been granted parole effective January 30, 1987. Cardiel also testified that he met with the parole board before it acted to grant parole. He

stated that he had been found guilty of, but not sentenced on, the Fremont County charge before that meeting and that the parole board knew this before granting parole. The district court made no finding as to whether it credited this testimony. In addition, Cardiel attempted to introduce testimony of a witness proffered as an expert concerning the administrative procedures governing the grant and rescission of parole, but the district court sustained the objection of opposing counsel and declined to accept the qualifications of the witness. At the conclusion of Cardiel's case, counsel for the superintendent moved to dismiss on the basis that Cardiel had not presented a prima facie case of entitlement to release. The superintendent's counsel made unsupported argument to the court that a parole agreement and actual release from physical custody are necessary to an effective grant of parole. The district court agreed and ordered dismissal, in effect discharging the writ of habeas corpus.[3] This appeal followed.

## II.

The central issue in this case is whether Cardiel was ever effectively granted parole on his 1985 sentence, and more specifically whether he established a prima facie case that he had been granted parole. Cardiel contends that the Notice of Parole Board Action establishes that parole was granted on his 1985 conviction and became effective January 30, 1987. He argues that because the parole board took no action to rescind, suspend or revoke parole, his one-year period of parole took effect as ordered and was fully served while he remained incarcerated on the Fremont County conviction. According to Cardiel's argument, he had fully served both his Fremont County and his 1985 Eagle County sentences as of January 30, 1991, and was entitled to immediate release.[4] Additionally, Cardiel asserts that

---

1. *See* § 18–3–403, 8B C.R.S. (1986).

2. *See* § 18–8–204.1, 8B C.R.S. (1986).

3. The district court's ruling does not specifically state that it applied the standard of failure to present a prima facie case. That standard, however, was specifically set forth in the superin-

tendent's motion to dismiss. The parties both assume this was the standard applied by the district court, and we do as well.

4. The superintendent argues that even if parole was effectively granted, Cardiel could not have begun serving the Fremont County sentence un-

the district court erred in refusing to accept his proffered expert witness who would have testified concerning parole board and DOC procedures for implementing and rescinding parole.

The superintendent, in contrast, contends that Cardiel was never effectively granted parole. The superintendent refers to the parole board action as only a "recommendation" for parole and advances several arguments in support of the position that parole was never granted. First, the superintendent argues that the parole was not granted because it was purportedly granted to a Fremont County detainer and could not be implemented in accordance with its terms because the detainer was automatically canceled or voided when Cardiel was sentenced on the underlying charge on November 13, 1986. Second, the superintendent asserts that parole was never effectively granted because Cardiel did not sign a parole agreement, an act that the superintendent argues is essential to the initiation of parole. Finally, the superintendent maintains that parole was not granted because Cardiel was never physically released from the custody of the DOC. According to the superintendent, when Cardiel received his Fremont County sentence, the DOC properly construed the two sentences as one continuous sentence pursuant to section 17–22.5–101, 8A C.R.S.

(1986), and consequently, according to DOC calculations, Cardiel will not have fully served his sentence until November 30, 1992.[5]

We first address whether Cardiel established a prima facie case that he was entitled to release. Concluding that he did, we then review his contention that the district court erred in refusing to accept the qualifications of the witness Cardiel tendered as an expert in parole procedure, for the issue is likely to arise in further proceedings.

### III.

### A.

The Habeas Corpus Act, §§ 13–45–101 to –119, 6A C.R.S. (1987 & 1991 Supp.), provides a civil remedy for the purpose of determining "whether the person instituting the proceeding is being unlawfully detained by the respondent who is holding him in custody." *Mulkey v. Sullivan*, 753 P.2d 1226, 1232 (Colo.1988). The only parties to a habeas corpus proceeding are the petitioner and the person holding the petitioner in custody, and the only issue for resolution is "whether the custodian has authority to deprive the petitioner of his liberty." *Reed v. People*, 745 P.2d 235, 238 (Colo.1987); *accord Stilley v. Tinsley*, 153 Colo. 66, 70, 385 P.2d 677, 680 (1963).[6]

---

til he had fully served out the parole. Under this reasoning, his four-year sentence would have started in January of 1988, the year after his parole began. Accordingly, the superintendent contends, Cardiel was not entitled to release in July 1991, when he petitioned for habeas corpus. On remand the trial court should determine whether, if parole was granted, the superintendent's argument is correct or whether, instead, parole ran concurrent with Cardiel's confinement on the Fremont County sentence.

5. § 17–22.5–101, 8A C.R.S. (1986), provides that "[f]or the purposes of this article [22.5, concerning inmate and parole time computation], when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence." However, the applicability of that section in this case is premised on the absence of an effective grant of parole. Because we remand for further proceedings on the issue of whether parole was in fact granted, we do not address the applicability of § 17–22.5–101.

6. Although in this case we address the appellant's entitlement to release from physical custody, "[h]abeas corpus relief may be available under some circumstances where complete discharge from custody does not result." *Kodama v. Johnson*, 786 P.2d 417, 419 (Colo.1990). "[A]ny restriction in excess of legal restraint that substantially infringes on basic rights may be remedied through habeas corpus...." *Marshall v. Kort*, 690 P.2d 219, 222 (Colo.1984) (habeas corpus was proper remedy for persons committed to state mental hospital pursuant to a plea of not guilty by reason of insanity challenging facility's failure to provide treatment); *see also Naranjo v. Johnson*, 770 P.2d 784 (Colo. 1989) (habeas corpus remedy available to challenge constitutionality of statutes governing parole eligibility); *Schooley v. Wilson*, 150 Colo. 483, 374 P.2d 353 (1962) (resort to remedy of habeas corpus appropriate to challenge imprisonment in violation of laws governing parole revocation notwithstanding that parole itself is a form of constructive custody).

When a person petitions a district court for a writ of habeas corpus, he must make a written application "setting forth the facts concerning his imprisonment and in whose custody he is detained." § 13–45–101(1). The petitioner in a habeas corpus proceeding has the burden of alleging facts entitling him to relief. *Pigg v. Tinsley*, 158 Colo. 160, 162, 405 P.2d 687, 689 (1965); *see also* § 13–45–101(1). Unless it appears from the petition and supporting documents that the petitioner is not entitled to relief, the court must issue a writ of habeas corpus forthwith. § 13–45–101(1); *People v. Calyer*, 736 P.2d 1204, 1207 (Colo. 1987); *Osborne v. Van Cleave*, 166 Colo. 398, 400, 443 P.2d 988, 989 (1968). Upon return of the writ, the court must set a hearing. § 13–45–103(1); *Calyer*, 736 P.2d at 1207.

"Because a habeas corpus petition filed pursuant to the [Habeas Corpus] Act initiates a special statutory proceeding, the Colorado Rules of Civil Procedure govern the proceeding insofar as they are consistent with the procedures delineated in the Act." *Calyer*, 736 P.2d at 1207; *see Evans v. District Court*, 194 Colo. 299, 302, 572 P.2d 811, 813 (1977) (stating converse of foregoing proposition); *Wright v. Tinsley*, 148 Colo. 258, 260–61, 365 P.2d 691, 692 (1961) (same). The Habeas Corpus Act, however, contemplates a less structured and more abbreviated hearing procedure than that utilized in other civil proceedings. Under the Act, "[t]he court shall proceed in a summary way to settle the facts by hearing the testimony and arguments ... of the prisoner and the person who holds him in custody and shall dispose of the prisoner as the case may require." § 13–45–103(1).

■ In the matter now before us, counsel for the superintendent moved to dismiss the proceeding at the conclusion of Cardiel's case on the basis that Cardiel had not presented a prima facie case entitling him to relief. A petitioner makes a prima facie showing by producing evidence that, when considered in a light most favorable to the petitioner and when all reasonable inferences therefrom are drawn in the peti-

tioner's favor, would permit the court to find that the petitioner is entitled to release. *Cf. People v. Shaver*, 630 P.2d 600, 605 (Colo.1981) (defining prima facie case in the context of a challenge to the constitutional sufficiency of traffic offense convictions underlying an order of driver's license revocation). The court evaluated the evidence on the basis of the prima facie case standard in resolving the motion to dismiss.[7] We are satisfied that in doing so the court acted within its discretion in implementing the statutory mandate to proceed in a summary way to settle the facts by hearing testimony and arguments of the prisoner and his custodian. *See* § 13–45–103(1). It remains to be determined, however, whether the district court correctly decided that Cardiel had not established a prima facie case.

### B.

■ In determining whether Cardiel made a prima facie showing that he was entitled to release, we rely on the relevant DOC regulations governing the board of parole and concerning the grant, suspension, and rescission of parole. *See* 8 C.C.R. § 1503–1 (1980). At the habeas corpus hearing the district court did not have these regulations before it; they are cited for the first time in Cardiel's reply brief on appeal. The regulatory provisions fail to support the superintendent's position that the notice of parole board action constituted a recommendation, and not a grant, of parole. In addition, they indicate that the effectiveness of a grant of parole is not conditioned on a prisoner signing a parole agreement or being released from physical custody.

In making our determination, we must consider the legal effect of the Notice of Parole Board Action Cardiel introduced into evidence at the hearing. The notice, dated November 4, 1986, states that the board acted to parole Cardiel to a Fremont County detainer, and also gives a projected release date of January 30, 1987. It is signed by two members of the parole

7. *See supra* n. 3, above.

board. The superintendent argues that this document is merely a "recommendation" that Cardiel be placed on parole in January of 1987, and does not itself constitute an effective grant of parole. The regulatory scheme established by the DOC does not support this argument, but rather, indicates that the notice is documentary evidence of the parole board's decision to grant parole. 8 C.C.R. § 1503–1 (1980) provides:

> 7.7 The board shall make its decision upon the concurrence of at least two (2) members of the board regarding application for parole at the conclusion of the interview. In such decision, the board shall grant parole, or it shall defer the case for further consideration, or it shall deny parole as provided by law.

Pursuant to paragraph 7.7 the board either grants or denies parole, or defers the application for further consideration. The regulations nowhere speak in terms of the board making a recommendation. Moreover, the notice presented by Cardiel is signed by two members of the parole board, the number required under the regulations to make a final binding decision to grant parole. *See also* § 17–2–201(9)(a)(I), 8A C.R.S. (1986) (final board action on an application for parole requires concurrence of two board members). Accordingly, the notice of parole board action appears to be documentary evidence of the final action taken by the board, which in this case was to grant Cardiel parole.

■ The superintendent next argues that parole is not granted until a prisoner has signed a parole agreement and has been released from the custody of the DOC. The relevant DOC regulations do not support this contention. Parole agreements are addressed in the regulations under the heading "Conditions of Parole." This section provides in pertinent part:

> 8.1 *When an inmate is released on parole*, the board shall require as a condition of parole that he refrain from violating federal, state, county, and municipal laws and court orders, and that he comply with the directives of the parole officer. Further, the parole agreement/order signed by the board and the inmate shall indicate that parole is explicitly conditioned upon compliance with all pre-release conditions imposed upon the inmate. A violation of any conditions of parole, upon proof of same, shall be sufficient grounds for revocation of parole.

> 8.2 The board shall establish conditions of parole consistent with the welfare of the public and conducive to the social adjustment of the parolee, and shall provide for the accountability of the parolee. All conditions of parole shall be set forth in a parole agreement....

> 8.3 Each inmate shall be furnished *at the time of his release* with a copy of the parole agreement/order and shall be instructed in the meaning of the conditions. Each inmate shall acknowledge in writing receipt of said parole agreement/order that he has read and understands such conditions.[8]

8 C.C.R. § 1503–1 (1980) (emphasis added).

These provisions make clear that the signing of a parole agreement is a condition of *release on parole*, not a condition of the actual *grant* of parole.[9] The scheme

---

8. The parole agreement requirement is now codified at § 17–2–201(5)(f)(I), 8A C.R.S. (1991 Supp.). That section provides: "As a condition of every parole, the parolee shall sign a written agreement that contains such parole conditions as deemed appropriate by the board...." This provision, however, applies only to persons paroled on or after July 1, 1987, § 17–2–201(5)(f)(III), and has no direct relevance to this dispute.

9. In an opinion letter to the executive director of the DOC, the Attorney General has questioned the State's ability to require a *signed* parole agreement even as a condition for release on parole. Specifically, the Attorney General opined: "We cannot compel an inmate to physically sign any document, nor can we make release on parole conditional upon signing such a document. However, the board could certainly impose reasonable conditions upon the parolees [sic], and serve him with notice of such conditions...." Op. Att'y Gen. 81 CO AD AGABZ (January 16, 1981). This opinion was issued before enactment of the legislation referred to in note 8, above.

provides a specific remedy for the situation where a condition of release on parole cannot be met. In such a situation, according to the regulations, parole may be suspended. 8 C.C.R. § 1503–1 provides:

> 12.1 When an inmate is granted parole and is unable to satisfy the conditions of parole prior to release, through no fault of his own, then his release upon parole shall be held in suspense until such time as he is able to satisfy the conditions of his parole. Suspension of release upon parole within the meaning of this paragraph shall not constitute revocation or rescission of parole. In the event that the inmate claims that he has satisfied the conditions of his parole, but the department or office of parole disagrees, the board shall hold a hearing to consider the inmate's contentions, in accordance with the procedures set forth in section 11.

This provision contemplates that the failure to meet a condition of release be redressed by initiating suspension proceedings wherein a prisoner is afforded certain procedural protections. This is in sharp contrast to the system envisioned by the superintendent where failure to meet a condition of release works to void the grant of parole as if it were never awarded. Under the superintendent's interpretation, paragraph 12.1 of 8 C.C.R. § 1503–1 is rendered superfluous.

Cardiel was not required to provide proof of a signed parole agreement at the habeas corpus hearing in order to establish a prima facie case because the agreement is not a condition to the effective grant of parole. Additionally, no evidence was presented at the hearing indicating that suspension proceedings had been initiated to address any failure by Cardiel to sign such an agreement.

The regulations also refute the superintendent's contention that parole is not effectively granted until a prisoner is released from custody. 8 C.C.R. § 1503–1 explains the procedures for reconsideration of the board's decision to grant parole before an inmate has been released:

> 11.1 All orders by the board granting parole shall be conditioned on good conduct of the inmate between the time of the granting of parole and the actual release on parole.
>
> 11.2 The board may reconsider the granting of parole prior to actual release for good cause shown. Rescission of parole shall be in accordance with the procedures set forth in section 11.4.[10]

By giving the board the option to reconsider its decision granting a prisoner parole prior to release, these regulatory provisions clearly do not contemplate a parole system in which parole is granted simultaneously with release. Moreover, as is true in the case of a suspension of parole, the regulations entitle a prisoner to procedural protections before the grant may be rescinded. No evidence was provided at the hearing to indicate that such procedures had been invoked in this case.

When taken as a whole, these regulatory provisions contemplate a scheme in which parole is granted by the board, and thereafter either rescission or suspension is necessary to curtail its effectiveness prior to release of the prisoner. Although a parole agreement is anticipated, it is not a condition to the grant of parole, but rather a condition of release on parole. Neither do the regulations suggest that a grant of

---

**10.** Paragraph 11.4 details the rights granted to an inmate when the board institutes rescission proceedings:

> 11.4 An inmate shall be given the following rights:
>   a. Advance written notice of the claimed violation must be given to the inmate prior to a rescission hearing.
>   b. At least 24 hours must be allowed the inmate to prepare his appearance before the board member after receipt by him of complaint.
>   c. The board shall permit representation at hearing, if requested by the inmate, by available representative of his choice, including a fellow inmate unless this will be unduly hazardous to institutional safety, security, or correctional goals.
>   d. The parolee shall have all the rights at the rescission hearing contained in sections 10.4 and 10.6.
>   e. Written statement by the board as to the evidence relied on and the reasons for the action ultimately taken.

parole is not effective until the prisoner is released. Cardiel presented the Notice of Parole Board Action indicating that he had been granted parole. There was no evidence that his parole had been suspended or rescinded. Under the circumstances, Cardiel presented a prima facie case that he had been granted parole.[11] The district court should have denied the motion to dismiss and afforded the superintendent an opportunity to present evidence.

### IV.

■ We now address the propriety of the district court's ruling declining to accept the qualifications of Cardiel's proffered expert witness. CRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"The matter of the qualification of an expert witness is discretionary with the trial court. The court's decision to allow a witness to testify as an expert will not be disturbed without a clear showing of an abuse of discretion." *White v. People*, 175 Colo. 119, 123, 486 P.2d 4, 6 (1971); *accord, e.g., People v. District Court*, 647 P.2d 1206, 1209 (Colo.1982).

Cardiel offered Keith Hunter, a fellow inmate at the Limon correctional facility, as an expert witness in parole procedures. Hunter testified that he had experience working as a law clerk in the legal access programs of both the Limon and Buena Vista correctional facilities.[12] Hunter stated that as a law clerk he worked under the supervision of licensed attorneys, that his job duties included working with habeas corpus petitions and other parole issues, and that he had received extensive on-the-

job training in DOC policy and regulations from various attorneys involved in the legal access program. Hunter also explained that he had worked as an inmate representative in Buena Vista, in which capacity he also dealt with parole issues.

Although Hunter's testimony concerning DOC policy and procedure may have been helpful, it is difficult to characterize the court's failure to accept him as an expert as an abuse of discretion. Hunter was himself an inmate in the Limon correctional facility and, as brought out on voir dire, has never been employed by the DOC or the parole board. The deferential standard of appellate review of the district court's decision on this matter recognizes that the trial judge is in the best position to assess the qualifications of a proffered expert witness. In this instance the trial court could properly have considered Hunter's lack of formal qualifications as an important factor in declining to accept his qualifications as an expert. Although an expert witness is not required under CRE 702 to have formal training, *see White v. People*, 175 Colo. 119, 122–23, 486 P.2d 4, 6 (1971) (court did not abuse its discretion by accepting as an expert in narcotic drugs analysis a police officer who was not a college graduate but who had on-the-job training with experts in the field, as well as extensive practical experience), we cannot say that the trial court abused its discretion by refusing to accept Hunter as an expert in the administrative procedures surrounding the grant and rescission of parole.

We reverse the judgment of dismissal entered by the district court and remand the case to that court for further proceedings consistent with the views expressed in this opinion. In the interest of an informed and just resolution of this matter, Cardiel should be given the opportunity to present any additional relevant evidence and the

11. We make this determination based on the information included in the record. We acknowledge that there may be other information or authority relevant to the issue of whether Cardiel made a prima facie showing that was not presented or argued at the district court hearing.

12. Hunter testified that the legal access program is a program that is supervised by the Department of Legal Affairs, apparently a reference to a department within the Department of Corrections.

superintendent should then have the opportunity to go forward with evidence of his own.

Judgment reversed and cause remanded.