Ralph D. HORTON, Petitioner–Appellee,

v.

John SUTHERS, Executive Director of
the Colorado Department of Correc-
tions, Respondent–Appellant.

No. 00SA58.

Supreme Court of Colorado,
En Banc.

Jan. 22, 2002.

As Modified on Denial of Rehearing
March 4, 2002.

David S. Kaplan, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy Public Defender, Denver, CO, Attorneys for Petitioner–Appellee.

Ken Salazar, Attorney General, Joseph Sanchez, Assistant Attorney General, Civil Litigation Section, Denver, CO, Attorneys for Respondent–Appellant.

Justice MARTINEZ delivered the opinion of the Court.

The director of the Department of Corrections (director) initiated this appeal following the Crowley County District Court's grant of Ralph Horton's petition for writ of habeas corpus. As discussed below, at the hearing on Horton's petition, the director had agreed with Horton that the Crowley County District Court should both hear the petition and grant the relief requested therein.

We are unpersuaded by the director's assertion on appeal that the Crowley County District Court (the habeas court) did not have jurisdiction to hear Horton's petition and grant the relief requested because Horton was first required to exhaust his remedies pursuant to Crim. P. 35. In reaching this conclusion, we are first required to address the issue of subject-matter jurisdiction, both generally and in the context of the writ of habeas corpus. We then consider the doctrine of exhaustion of legal remedies, and,

after reviewing our prior precedent and relevant precedent from other jurisdictions, conclude that the director's exhaustion of remedies argument is not jurisdictional and, as a result, was waivable and in this case actually waived. Finally, we discuss the doctrine of invited error and conclude that the director invited the error by agreeing that Horton was entitled to the relief he requested. Accordingly, we affirm the Crowley County District Court.

## I. Facts and Procedure

On October 22, 1997, Horton was convicted in the District Court for the City and County of Denver (the trial court) of the sale or possession of a schedule I or II controlled substance, a class 3 felony. *See* § 18–18–405(2)(a)(I), 6 C.R.S. (2001). On December 1, 1997, the trial court sentenced Horton to community corrections for two years. After community corrections rejected Horton, the trial court resentenced Horton to two years in the Department of Corrections (DOC). The trial court also granted Horton credit for 205 days of presentence confinement. On February 12, 1998, the trial court amended the mittimus in Horton's case to include the mandatory parole period. Specifically, the mittimus was amended to include the language, "any term of parole authorized by Section CRS 18–1–105(1)(a)(V)." [1] Horton was paroled on February 3, 1999. However, he violated his parole and was thus returned to the DOC on June 3, 1999.

On October 22, 1999, Horton filed a pro se petition for writ of habeas corpus in the Crowley County District Court. Horton's petition claimed that he was entitled to immediate release because, although he had fully served his sentence, the DOC was illegally refusing to release him. More specifically, Horton asserted that he was entitled to immediate release because he had served his entire two-year sentence before his parole was revoked.

The habeas court issued the writ, and a hearing was held on November 2, 1999. In his return to the writ of habeas corpus, and at the habeas corpus hearing, the director

---

**1.** Section 18–1–105(1)(a)(V)(A), 6 C.R.S. (2000), provides that the mandatory period of parole for a class 3 felony is five years.

argued that the habeas court did not have subject-matter jurisdiction over the case. In support of this argument, the director stated that Horton had previously filed a Crim. P. 35(a) motion to correct an illegal sentence in the trial court, which was still pending at the time of the hearing. The director further contended that the habeas court lacked subject-matter jurisdiction because Horton had previously filed a Crim. P. 35(c) motion that had been denied and was on appeal to the court of appeals as No. 98CA94.[2] The habeas court accepted the director's arguments and denied the writ of habeas corpus on November 3, 1999.

On December 2, 1999, the trial court denied Horton's Crim. P. 35(a) motion on the grounds that it did not have subject-matter jurisdiction over the case because the court of appeals had such jurisdiction.[3] Accordingly, Horton filed a motion for reconsideration with the habeas court on December 10, 1999. The director responded to the motion for reconsideration by agreeing with Horton that the habeas court could now properly hear the matter and that the relief sought by Horton was proper. Specifically, the director's response stated:

> 4. Based on close review of [Horton's] pending appeal before the Colorado Court of Appeals and [Horton's] request for relief upon the petition for writ of habeas corpus before this Court, the issues are not the same. Therefore the [director] agrees with [Horton] that this Court now has jurisdiction to consider the issues addressed in the petition for writ of habeas corpus.

> 5. Based on C.R.S. § 17–22.5–303 and *People v. Mark A. Johnson*, 97CA214, the [director] does not object to this Court granting [Horton's] request for relief.

> THEREFORE, [the director] does not oppose [Horton's] request for habeas relief.

Relying on the director's representations in the response to the motion to reconsider, the habeas court granted Horton the relief he requested, and on January 19, 2000, ordered the DOC to release him immediately. The director appealed this judgment to us.[4] For the reasons discussed below, we affirm.

## II. Analysis

The director asserts two arguments on appeal. First, he contends that the habeas court lacked subject-matter jurisdiction to grant the relief requested in Horton's petition for writ of habeas corpus after the trial court had denied his Crim. P. 35(a) motion. More specifically, the director asserts that a defendant must exhaust all of his legal remedies under Crim. P. 35 before filing a petition for writ of habeas corpus. Second, he asserts that, if we find that subject-matter jurisdiction was proper in the habeas court, that court erroneously decided the merits of Horton's petition for writ of habeas corpus by granting the relief requested. The director asserts the second argument for the first time in this appeal.

---

2. Our own review of the court of appeals' record reveals that case No. 98CA94 was in fact the direct appeal of Horton's conviction, not an appeal of the denial of a Crim. P. 35(c) motion. On December 30, 1999, the court of appeals affirmed Horton's conviction. *People v. Horton*, No. 98CA94 (Colo.App. Dec. 30, 1999).

3. *See People v. Dist. Court*, 638 P.2d 65, 66–67 (Colo.1981) (holding that the perfection of an appeal of a final judgment granting relief under Crim. P. 35(c) divests the trial court of subject-matter jurisdiction to entertain any motion for an order that affects the judgment, in that case a motion under Crim. P. 35(b) for reduction of sentence); *see also People v. Bossert*, 722 P.2d 998, 1001 n. 4 (Colo.1986) (trial court lacked jurisdiction to rule upon the defendant's Crim. P.

35(c) motions because they were filed after the notice of appeal had been filed); *People v. Jones*, 631 P.2d 1132, 1133 (Colo.1981) (once an appeal has been perfected, the trial court is divested of jurisdiction to issue any further orders in the case). *But cf. People v. Small*, 631 P.2d 148, 153 (Colo.1981) (holding that the trial court properly entertained the defendant's Crim. P. 35 motion to vacate his sentence on speedy trial grounds even though the direct appeal of his conviction was pending because the speedy trial issue was specifically reserved for decision after trial).

4. This court has jurisdiction over an appeal from a final judgment of a district court granting or denying a writ of habeas corpus. § 13–4–102(1)(e), 5 C.R.S. (2001); *Meyers v. Price*, 842 P.2d 229, 230 n. 1 (Colo.1992).

## A. Subject–Matter Jurisdiction

Upon Horton's initial filing of his petition for writ of habeas corpus, the director asserted that the habeas court did not have subject-matter jurisdiction. However, in response to Horton's motion to reconsider, the director reversed his position, agreeing with Horton that the habeas court did have jurisdiction. The director further stated that he did not object to the court granting the relief Horton requested, which was immediate release from custody.

### 1. Subject–Matter Jurisdiction Generally

■ Subject-matter jurisdiction "concerns 'the court's authority to deal with the class of cases in which it renders judgment.' " *Closed Basin Landowners Ass'n. v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 636 (Colo.1987) (quoting *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo. 1981)). A court has subject-matter jurisdiction if "the case is one of the type of cases that the court has been empowered to entertain by the sovereign from which the court derives its authority." *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo.1986).

■ The director properly asserts that subject-matter jurisdiction is not an issue waivable by the parties: "Jurisdiction is not conferred or taken away from a court based on the position of a party regarding the court's jurisdiction; instead, jurisdiction concerns the court's authority to decide the class of cases in which it renders judgment and is determined as a matter of law." *Winslow Constr. Co. v. City & County of Denver*, 960 P.2d 685, 690 (Colo.1998). However, as explained below, the director conflates subject-matter jurisdiction with the doctrine of exhaustion of remedies. Accordingly, the director did *not* attempt to confer subject-matter jurisdiction upon the habeas court contrary to law, as he now contends. Instead, the director merely waived the opportunity to present the exhaustion of remedies argument he attempts to present in this appeal by agreeing to the relief sought in Horton's habeas petition.

### 2. Subject–Matter Jurisdiction and the Writ of Habeas Corpus

■ Contrary to the director's assertion, the habeas court did not lack subject-matter jurisdiction. In fact, all district courts in this state have subject-matter jurisdiction to entertain and decide habeas corpus cases. *See* § 13–45–101, 5 C.R.S. (2001); *Duran v. Price*, 868 P.2d 375, 378 (Colo.1994); *Stilley v. Tinsley*, 153 Colo. 66, 86, 385 P.2d 677, 688 (1963). "Since it is the great writ of freedom in Anglo–American jurisprudence, it is not to be hedged or in any way circumscribed with technical requirements." *People ex rel. Wyse v. Dist. Court*, 180 Colo. 88, 92, 503 P.2d 154, 156 (1972). Further, the Colorado Constitution provides that "[t]he privilege of the writ of habeas corpus shall never be suspended, unless when in case of rebellion or invasion, the public safety may require it." Colo. Const. art. II, § 21.

■ There are, however, some limits to the issues that may be raised in a petition for writ of habeas corpus and heard by a habeas court. The sole issue for resolution in a habeas corpus proceeding is whether the petitioner is being unlawfully detained. *See, e.g., Graham v. Gunter*, 855 P.2d 1384, 1385 (Colo.1993). Thus, a habeas court may not "inquire into the legality or justice of a judgment or decree of a court legally constituted, in any other manner." § 13–45–103(3). In other words, a habeas court may only hear matters presented in a *properly pleaded* petition for habeas,[5] namely whether the sentence is void or illegal. *See Graham*, 855 P.2d at 1385; *Mulkey v. Sullivan*, 753 P.2d 1226, 1232 (Colo.1988); *Johnson v. Black*, 137 Colo. 119, 124, 322 P.2d 99, 103 (1958).

As a result of our cases articulating the limitations of petitions for habeas corpus, we have clearly defined the contours of habeas corpus with regard to some particular and discrete issues. For example, we have held

---

5. In some instances in which a defendant has asserted an improper ground for relief in a petition for habeas corpus, this court has instructed that such motion should be converted to a Crim. P. 35 motion and considered on the merits. *See, e.g., Graham v. Gunter*, 855 P.2d 1384, 1384–85 (Colo.1993).

that a petitioner's allegation that his confession was coerced is not a justiciable issue in a habeas corpus proceeding, *Shearer v. Patterson,* 159 Colo. 319, 320, 411 P.2d 247, 248 (1966); that an alleged speedy trial violation is not properly asserted in a petition for writ of habeas corpus, *Dodge v. People,* 178 Colo. 71, 73, 495 P.2d 213, 214 (1972), that an attempt to restore good time credits is not properly asserted in a petition for writ of habeas corpus, *Kodama v. Johnson,* 786 P.2d 417, 419–20 (Colo.1990), and that an ineffective assistance of counsel claim is not properly asserted in habeas corpus proceeding, *Tuller v. Neal,* 886 P.2d 279, 279 (Colo.1994). Further, we have held that in some circumstances, a petitioner for the writ may request relief that falls short of complete release from custody. *See, e.g., Marshall v. Kort,* 690 P.2d 219, 222–23 (Colo.1984), rev'd in part on other grounds, *Jacobs v. Carmel,* 869 P.2d 211 (Colo.1994).

■ Beyond these kinds of specific issues that do not go to the issue of the lawfulness of the petitioner's continued restraint, however, our prior holdings also stand for the proposition that habeas corpus jurisdiction is broad when a habeas court is presented with a properly pleaded petition for the writ. For example, the *Stilley* court stated that "[t]o impose conditions on issuance of the writ, such as exhausting other available remedies in situations such as we have here, is pro tanto a suspension of the writ.... We are not unmindful of Rule 35 of Colorado Rules of Criminal Procedure ... and observe that that rule in no way seeks to impose any conditions on the issuance of habeas corpus writs—it only affords a remedy for those seeking a proper sentence, a remedy which the prisoner may seek or not seek at his election." *Stilley,* 153 Colo. at 86–87, 385 P.2d at 688–89. Further, "open-ended relief accords with the essential purpose of the

writ: 'The very nature of the writ demands that it be administered with the initiative and flexibility to insure that miscarriages of justice within its reach are surfaced and corrected.' " *Kort, 690 P.2d* at 222 (quoting *Harris v. Nelson,* 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969)).

### 3. Horton's Petition for Writ of Habeas Corpus

■ In this case, Horton's petition for habeas corpus alleged, in pertinent part, that his continued incarceration was void and illegal. In determining what constitutes a "void" or "illegal" judgment for purposes of subject-matter jurisdiction vis-à-vis the writ of habeas corpus, the allegation that a petitioner is entitled to immediate release has been recognized by this court as a proper basis for petitioning for the writ.[6] *See, e.g., Johnson v. Gunter,* 852 P.2d 1263, 1265 (Colo. 1993); *Cardiel v. Brittain,* 833 P.2d 748, 751 (Colo.1992); *Black,* 137 Colo. at 123–24, 322 P.2d at 103. Accordingly, the habeas court had subject-matter jurisdiction to hear and decide Horton's petition.

### B. Exhaustion of Remedies

Our determination that the habeas court had subject-matter jurisdiction because Horton filed a properly pleaded habeas corpus petition does not end our inquiry. The director's argument regarding jurisdiction is more complex than the straightforward assertion that Horton's allegations were improperly pleaded in a habeas petition. The director contends not only that a petitioner must file a properly pleaded petition for the writ, but he also argues that a petitioner must exhaust all remedies under Crim. P. 35 before a habeas court has subject-matter jurisdiction to consider a petition for writ of habeas corpus. The director thus argues

---

6. Because we do not reach the merits of the director's arguments based on the invited error doctrine, *see* discussion at page 618–620, *infra,* we need not address the issue of what constitutes a "properly pleaded" petition for a writ of habeas corpus. Our prior case law has articulated that "void" sentences are open to attack through the writ, but that "illegal" sentences are not. *See, e.g., Mulkey,* 753 P.2d at 1232. Because Horton's petition for writ of habeas corpus alleged that his continued confinement was "void," there is no question that his claim for relief was properly asserted in a petition for writ of habeas corpus. We therefore need not resolve the broader question of what the parameters are for a "properly pleaded" petition for the writ. Our decision today, therefore, does not define the scope of issues that may properly be asserted in a petition for writ of habeas corpus.

that the alleged requirement of exhaustion of remedies is jurisdictional; a petitioner must, according to the director's argument, exhaust all remedies under Crim. P. 35 before jurisdiction could be triggered in a habeas court.

### 1. Exhaustion of Remedies is Not Jurisdictional

■ The director's argument that exhausting remedies under Crim. P. 35 is a condition precedent to a habeas court having jurisdiction is erroneous. As discussed above, all district courts have subject-matter jurisdiction to hear petitions for writs of habeas corpus. Whether a petitioner must file a Crim. P. 35 motion before, or in lieu of, a petition for the writ goes to the issue of whether a habeas court should *exercise* that jurisdiction, not whether the habeas court *has* such jurisdiction in the first instance.

■ The several observations drawn from our prior holdings regarding the nature and extent of a habeas court's jurisdiction lend support to our conclusion that the director's exhaustion of remedies argument is misplaced. *See* discussion in part II.A.2, *supra*. Such broad habeas corpus jurisdiction suggests that district courts presented with clear-cut habeas petitions may grant or deny such petitions notwithstanding the availability of relief under Crim. P. 35: "Prohibition does not lie, in this court or in district courts, to prevent courts having jurisdiction of habeas corpus . . . from proceeding to grant or deny the relief requested." *Stilley*, 153 Colo. at 88, 385 P.2d at 689. Our precedent thus supports the general proposition that habeas corpus jurisdiction is broad, as well as our

conclusion that any possibility that exhaustion of remedies might be required is not jurisdictional.

■ United States Supreme Court precedent supports our conclusion. That Court has held that any requirement of exhaustion of remedies in the habeas corpus context is not jurisdictional. *See, e.g., Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455 (1939).[7] In reaching this conclusion, the Court reasoned that the exhaustion of remedies doctrine is based on the principle of comity, rather than on the jurisdictional power of federal courts to entertain petitions for habeas corpus. *Castille*, 489 U.S. at 349, 109 S.Ct. 1056; *Granberry*, 481 U.S. at 134, 107 S.Ct. 1671. Therefore, the state may waive the argument that a petitioner has failed to exhaust his remedies. *Granberry*, 481 U.S. at 134, 107 S.Ct. 1671; *see also Brown v. Maass*, 11 F.3d 914, 914–15 (9th Cir.1993). Further, at least one state supreme court has held that exhaustion of remedies in the habeas corpus context is not jurisdictional. *See In re Wallace*, 3 Cal.3d 289, 90 Cal.Rptr. 176, 475 P.2d 208, 210 (1970).

### 2. The Director Waived the Exhaustion of Remedies Argument

■ Accordingly, the director's assertion that Horton must exhaust all remedies under Crim. P. 35 before initiating a habeas proceeding is not jurisdictional in nature.[8]

---

7. Although the United States Supreme Court's conclusions regarding exhaustion of remedies were in the context of a federal habeas corpus proceeding, which requires that all state remedies be exhausted before a federal habeas action is filed, we see no reason to depart from that Court's reasoning in the context of the state habeas corpus proceeding that is presently before us. We note, however, that our reference to federal habeas corpus precedent is narrow in scope. We only consider the doctrine of federal habeas corpus precedent to imply exhaustion of remedies is required in the state habeas corpus context.

8. The doctrine of exhaustion of *judicial* remedies, implicated in the present case, should not be confused with the doctrine of exhaustion of *administrative* remedies, which is not at issue in this case. *See generally Alacare, Inc.-North v.*

*Baggiano*, 785 F.2d 963, 970 (11th Cir.1986) ("First, the benefit of requiring administrative exhaustion is that it gives the parties and the court the benefit of the agency's longstanding expertise. . . . The same does not hold for requiring exhaustion of state court remedies."); *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 99 Cal.Rptr.2d 316, 5 P.3d 874, 879–80 (2000) ("Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' Exhaustion of *judicial* remedies, on the other hand, is necessary to avoid giving binding 'effect to the administrative agency's decision because that decision had achieved finality due to the aggrieved party's failure to pursue the exclusive *judicial* remedy for reviewing administrative action.' ") (citations omitted) (emphasis in original). Thus, although we have held that exhaustion of *administrative* remedies implicates jurisdiction, *see State v. Golden's Concrete Co.*, 962 P.2d 919

Because it does not go to the existence of jurisdiction of the court, but rather to whether the court should elect to exercise that jurisdiction, the director's argument regarding the doctrine of exhaustion of legal remedies in habeas corpus cases *was* waivable by the parties. In this case, counsel for the director did just that when he conceded, upon the habeas court's reconsideration of Horton's petition, that the habeas court should grant Horton's requested relief. The director's conflation of the concept of subject-matter jurisdiction and the doctrine of exhaustion of remedies renders his request for relief improper.

### C. The Invited Error Doctrine

■ The director's request for relief is improper under the doctrine of invited error. In essence, the director reversed his previous position and specifically conceded that the habeas court should hear the case and grant the relief requested by Horton. In his reply brief, the director expressly admits that concession is contrary to the argument he makes to us. The doctrine of invited error bars the director from changing course in this way.

#### 1. The Invited Error Doctrine Generally

■ The doctrine of invited error captures the principle that "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide by the consequences of his acts." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989). The doctrine has been described as "an application of the estoppel principle." *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 87 Cal.Rptr.2d 453, 981 P.2d 79, 92 (1999); *see also Missouri, Kan. & Tex. Railway Co. v.*

*Eyer*, 96 Tex. 72, 70 S.W. 529 (1902) ("The [doctrine of invited error] is but a deduction from the doctrine of estoppel."); *Graham v. Graham*, 41 Wash.2d 845, 252 P.2d 313, 316 (1953) ("[T]he doctrine of invited error ... arises as one phase of estoppel or waiver of a right to take a position inconsistent with that initially taken."). Although a species of the equitable doctrine of estoppel, the invited error doctrine is narrower than estoppel. Specifically, the invited error doctrine is triggered by actions taken by a party in the course of litigation. In contrast, estoppel is usually triggered by the conduct underlying a cause of action brought before a court. Thus, the doctrine of invited error, while encompassing the conceptual basis of estoppel, is properly invoked only against actions taken in the course of litigation:

> Invited error is a cardinal rule of appellate review applied to a wide range of conduct. It ... prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error. The idea of invited error is ... to protect principles underlying notions of judicial economy and integrity by allocating appropriate responsibility for the inducement of error. Having induced an error, a party in a normal case may not at a later stage of the [proceedings] use the error to set aside its immediate and adverse consequences.

*Roberts v. Consolidation Coal Co.*, 208 W.Va. 218, 539 S.E.2d 478, 488 (2000). Accordingly, the doctrine "[o]perates to bar a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error." *Brett v. Great Am. Rec.*, 144 N.J. 479, 677 A.2d 705, 717 (1995).

(Colo.1998), that holding is not controlling precedent in the present case, which *deals* with exhaustion of judicial remedies. We require the exhaustion of administrative remedies before jurisdiction is vested in courts to conserve judicial resources, to enable the agency to make initial determinations on matters within its expertise and to compile a record sufficient for judicial review, and to give the agency an opportunity to correct its own errors. *Id.* at 923. The exhaustion of judicial remedies in the context of the

writ of habeas corpus, if required, varies from the exhaustion of administrative remedies because the habeas court is not reviewing issues that were solely the province of the trial or sentencing court, as is the case in the administrative context. Instead, the habeas court is reviewing issues for which it is both competent and well-suited to address, which is why the constitution and the habeas statute vest jurisdiction in all district courts to entertain habeas petitions in the first instance.

We have held that the doctrine of invited error even applies to errors implicating constitutional rights. *Zapata*, 779 P.2d at 1309 (citing *Geer v. Alaniz*, 138 Colo. 177, 181, 331 P.2d 260, 262 (1958)). The doctrine has been applied against both plaintiffs and defendants in both criminal and civil cases. *See, e.g., Palmer v. Gleason*, 154 Colo. 145, 147–48 389 P.2d 90, 91 (1964) (invoking the doctrine against a defendant in a civil case); *People v. Shackelford*, 182 Colo. 48, 50, 511 P.2d 19, 20 (1973) (invoking the doctrine against a defendant in a criminal case); *Leister v. Wells*, 300 Mo. 262, 254 S.W. 75 (1923) (invoking the doctrine against a plaintiff in a civil case).

■ Further, the doctrine is not limited to cases in which a party requests that the court take a particular action and then later complains of that same action. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384–85 (Colo.1998). The doctrine applies where one party expressly acquiesces to conduct by the court or the opposing party.[9] *See, e.g., id.* at 1385 (holding that the invited error doctrine applied where the trial court rejected a jury instruction tendered by defendant State Farm and State Farm elected not to tender a replacement instruction, thereby implicitly agreeing with the court's action); *Boothe v. People*, 814 P.2d 372, 376 (Colo. 1991) (Lohr, J., concurring) (holding that the invited error doctrine applied where defendant's counsel "was fully advised and acquiesced in the court's response to the jury's question" and "did agree that the appropriate response" was the response suggested by the court); *People v. Gregor*, 26 P.3d 530, 532 (Colo.App.2000) (holding that the invited error doctrine applied where the defendant acquiesced to a jury instruction); *People v. Raglin*, 21 P.3d 419, 423 (Colo.App. 2000) (holding that the invited error doctrine applied where the defendant expressly de-

clined the trial court's offer to replace a juror with an alternate juror). Thus, the fact that the director expressly acquiesced to the habeas court hearing the petition for writ of habeas corpus and granting the relief sought by Horton warrants application of the doctrine of invited error.[10]

### 2. The Application of the Invited Error Doctrine to this Case

The facts of this case present no reason for us to depart from our longstanding recognition and application of the invited error rule. To hold otherwise would improperly reward the director for conduct we have not previously overlooked when undertaken by a defendant. *See, e.g., Zapata*, 779 P.2d at 1307 ("On certiorari, the prosecution asserts the invited error doctrine bars appellate review of error in a jury instruction, where the instruction was drafted and tendered by the defense. We conclude that it does."); *see also Hansen*, 957 P.2d at 1384–85; *People v. Montoya*, 928 P.2d 781, 784 (Colo.App.1996).

Because consideration of the merits of the director's arguments is improper based on the doctrine of invited error, we do not address whether exhaustion of remedies under Crim. P. 35 may be required in some circumstances before a petition for writ of habeas corpus may be filed. *Compare Stilley*, 153 Colo. at 86–87, 385 P.2d at 688–89 ("To impose conditions on issuance of the writ, such as exhausting other available remedies in situations such as we have here, is pro tanto a suspension of the writ.") *with Moody v. Corsentino*, 843 P.2d 1355, 1361 (Colo.1993) ("Generally, a court will not consider a request for habeas corpus relief unless the petitioner has no other form of relief available.").

---

9. Expressly agreeing to conduct by the trial court or opposing party is distinct from merely failing to object. Our application of the invited error doctrine in this case should not be read as applying to a failure to object. Instead, in this case, the director expressly agreed with Horton's proposed relief and thus affirmatively acquiesced to the habeas court's granting of that relief.

10. Significantly, our application of the doctrine of invited error merely mandates that the director's claim cannot be considered. Our application of the doctrine of invited error, then, does not determine or imply that there was actual error in this case.

## III. Conclusion

We conclude that because the director agreed that the habeas court should both hear the petition for habeas corpus and grant the relief requested therein, the doctrine of invited error now precludes him from challenging either of those issues on appeal. Accordingly, we affirm the judgment of the Crowley County District Court.

Justice COATS specially concurs.

Justice COATS, specially concurring:

I too believe that the director is estopped from challenging by appeal to a higher court a judgment to which he expressly agreed. I am, however, reluctant to characterize the concession in this case as "invited error" for fear of confounding it with an intentional choice made for tactical reasons at trial. I write separately to make clear that I do not believe (and do not understand the majority opinion to imply) that a custodian is without any means of seeking correction of an erroneous discharge order in which he has acquiesced. Rule 60 of the Colorado Rules of Civil Procedure is designed to strike the appropriate balance between considerations of finality and justice in an individual case, and I see no reason why that rule is either inapplicable or insufficiently flexible to provide relief from erroneous orders granting relief in the habeas corpus context.

As the pro se petitioner's appellate counsel made clear, the petitioner did not provide the district court with the amended Judgment, Sentence, and Mittimus, in which the sentencing court directed that he serve two years in the custody of the Department of Corrections plus any period of mandatory parole authorized by section 18–1–105(1)(a)(V)(A). In fact, the petitioner represented to the court that his sentence included no more than two years of incarcera-

tion, which he claimed to have already served. Counsel for the custodian was apparently unaware of and therefore failed to bring to the court's attention the controlling mittimus. Relying on the not-yet-final court of appeals' opinion in *People v. Johnson*, 987 P.2d 928 (Colo.App.1999), counsel for the custodian agreed, however, that any sentence that included an additional period of mandatory parole for someone in the defendant's circumstances would be illegal. As we subsequently made clear in *People v. Johnson*, 13 P.3d 309, 313 (Colo.2001)(reversing court of appeals), such a period of mandatory parole was in fact required by statute. In effect, the custodian not only agreed that the petitioner could not legally be made to serve the period of parole specified in section 18–1–105(1)(a)(V)(A), and that the district court had jurisdiction to grant the relief requested by the petitioner, but also that the court should grant the relief requested and discharge the petitioner from the custody of the department.

It is a basic principle of appellate procedure that unless the trial court has been given an opportunity to correct an alleged error, it will not be considered on review for anything other than plain error. *People v. Gallegos*, 764 P.2d 76, 77 (Colo.1988) (declining to consider merits of People's appeal challenging legality of sentence in absence of contemporaneous objection or request of trial court pursuant to Crim. P. 35(a) to correct the error); *Deason v. Lewis*, 706 P.2d 1283, 1286 (Colo.App.1985) (relying on *Bigler v. Bigler*, 82 Colo. 463, 260 P. 1081 (1927), for proposition that a party has no right to appeal from an order or judgment to which his consent was regularly obtained); *see also Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo.1998) ("It has long been this court's practice not to review errors alleged by a party who is responsible for the claimed error."). Whether or not this policy allows an exception for rulings beyond the subject-matter jurisdiction of courts of

general jurisdiction, *cf. Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (imposing a duty on federal appellate courts to satisfy themselves of the jurisdiction of lower federal courts, in part because they are courts of limited jurisdiction), the custodian should still be estopped from challenging the discharge order at issue here. As a court of general jurisdiction within the state, the district court was clearly a court to which the legislature has given authority to entertain the prisoner's petition for a writ of habeas corpus, and its issuance of the writ and order of discharge were relief specifically authorized by the legislature for this class of cases. *See* §§ 13–45–101 to –103, 5 C.R.S. (2001).

While the grounds upon which habeas relief would be proper are narrowly circumscribed by the statute, §§ 13–45–102, –103, a court's reasons for granting relief authorized for this kind of action cannot deprive it of subject-matter jurisdiction to rule. In any event, however, a determination that a sentence to mandatory parole would exceed the jurisdiction of the sentencing court, and therefore be void, falls squarely within the statutorily authorized grounds for granting habeas relief, even if that determination is erroneous. *See* § 13–45–102(2)(a); *Stilley v. Tinsley,* 153 Colo. 66, 385 P.2d 677 (1963) (sentence not within statutory limitations is not merely erroneous but void); *see also In re Birdwell,* 50 Cal.App.4th 926, 58 Cal. Rptr.2d 244, 246 (1996) (imposition of unauthorized sentence is act in excess of court's jurisdiction). Similarly, while it may be error in a particular case for a district court to do so, granting a writ of habeas corpus and discharging a prisoner is not beyond the jurisdiction of the court merely because other

remedies that could accomplish the prisoner's release remain available in other courts.[1]

The policy considerations supporting the various doctrines limiting a party from changing its position on appeal are too obvious and well-accepted to require discussion. Even though habeas corpus is a unique legal remedy, implicating not only individual but also important public interests, and even though custodians should be encouraged to ensure that individuals are not held in custody longer than is authorized by law, the interests of regularity and finality of judicial process would be ill-served by simply permitting the custodian to abandon his judicial commitments at will or seek reversal in higher courts of the very judgments in which he joined below. It is also well-settled, however, that there are circumstances, related to the fault of the parties and the greater interests of justice and equity, in which concerns for finality must give way.

Rule 60 of the civil rules provides for relief from final judgments in such limited circumstances. Although habeas corpus is a kind of special statutory proceeding, we have made clear that it is civil in nature, having as its focus the entitlement to discharge from custody rather than the legality of a conviction or sentence. *Graham v. Gunter,* 855 P.2d 1384, 1385 (Colo.1993). The proper party to defend against a claim for habeas relief is therefore the custodian of the petitioner rather than the People of the state. *Duran v. Price,* 868 P.2d 375, 378 (Colo.1994). The procedural requirements of the habeas corpus statute clearly take precedence over the civil rules, *see* C.R.C.P. 1(a), 81(a) (rules apply to special statutory proceedings except where inconsistent or in conflict), but the statute in no way prescribes or limits post-

1. Unlike the majority, I understand the custodian to be asserting that the petitioner's claim had to be raised, if at all, in the sentencing court pursuant to Crim. P. 35 rather than asserting that a failure to exhaust alternate remedies is jurisdictional. Similarly, I consider the federal exhaustion doctrine limiting petitions by state prisoners pursuant to 28 U.S.C. § 2254 to be based on considerations of federalism with little, if any, applicability here. Nevertheless, I agree that the failure of the petitioner to first pursue other

available avenues of relief does not deprive a district court of jurisdiction to entertain a petition for writ of habeas corpus and to order the petitioner's immediate release, even though it might be error to do so in the face of a timely objection. *Cf. Duran v. Price,* 868 P.2d 375 (Colo.1994) (habeas court should have treated petition, claiming entitlement to release because sentence had been served before parole was revoked, as Crim. P. 35(c) motion and transferred venue to sentencing court).

judgment remedies. *Cf. Burton v. Johnson,* 975 F.2d 690 (10th Cir.1992) (arriving at same conclusion with respect to the applicability of Fed.R.Civ.P. 60(b) in the context of federal hábeas corpus proceedings). The rule permits relief not only for clerical errors but also for mistakes, misrepresentations by the opposing party, developments making the judgment no longer equitable, or any other reason justifying relief. While we have held that a change in decisional law is not in itself a sufficient ground for relief pursuant to C.R.C.P. 60(b)(5), *Davidson v. McClellan,* 16 P.3d 233 (Colo.2001), reliance on appellate opinions that were reversed before ever becoming final or that have since been overruled may, under some circumstances, amount to sufficient justification. *State Farm Auto. Ins. Co. v. McMillan,* 925 P.2d 785, 791 (Colo.1996). Given the unique public interest in having convicted felons serve the sentences mandated by the General Assembly, C.R.C.P. 60(b)(5) has particular applicability to erroneous discharge orders.

It is also well-settled that a sentence that is not even within the range authorized by the legislature can be corrected at any time, whether or not it was acquiesced in by the parties. *See* Crim. P. 35(a); *Gallegos,* 764 P.2d at 77. Specifically, a sentence that does not include a special period of parole mandated by statute is illegal, even if it was imposed pursuant to a plea agreement. *Craig v. People,* 986 P.2d 951, 964 (Colo.1999). While an improperly induced plea may be withdrawn, an illegal sentence fashioned by the parties is not subject to specific performance. *Id.* at 959. Insulating from all reconsideration and review an order discharging a convicted felon who does not even allege service of the minimum sentence statutorily required for his crime, based solely on the invitation of the parties to misconstrue the applicable law, would be tantamount in its effect to condoning an illegal sentence. Had the custodian simply released the defendant before completing his sentence as the result of mistake, either of fact or law, the prisoner's return to custody would not be barred but would depend upon the equities of the case. *See Brown v. Brittain,* 773 P.2d 570 (Colo.1989). I believe the considerations relevant to the correction of an erroneous release by the custodian are not unlike those justifying relief from an erroneous order of discharge.

I therefore specially concur.