129 P.3d 1086 (2005)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of M.S. and K.C.S., Children,
and Concerning S.S., Respondent-Appellant.
No. 05CA1428.
Colorado Court of Appeals, Division III.
December 15, 2005.
Certiorari Denied March 6, 2006.
Kathleen H. Taylor, County Attorney, Craig, Colorado, for Petitioner-Appellee.
Michele M. Desoer, Guardian Ad Litem.
Leslie A. Goldstein, LLC, Leslie A. Goldstein, Steamboat Springs, Colorado, for Respondent-Appellant.
Opinion by: Judge HAWTHORNE.
S.S. (father) appeals from the judgment terminating the parent-child legal relationship between him and his children, M.S. and K.C.S. We affirm.

I.
Father contends that the trial court erred in finding that the treatment plan was appropriate because it did not include a mental health component. Father argues that the treatment plan failed to address his suicidal ideations, undiagnosed depression, and self-medication with illegal substances, all of *1087 which precluded him from complying with the treatment plan. We conclude that father is precluded from asserting this argument because he stipulated to the treatment plan and failed to timely request modification of it.
To terminate the parent-child legal relationship pursuant to § 19-3-604(1)(c), C.R.S. 2005, a trial court must find, among other things, that an appropriate treatment plan, approved by the court, has not been complied with by the parent or has not been successful in rehabilitating the parent. Section 19-3-604(1)(c)(I), C.R.S.2005; People in Interest of A.M.D., 648 P.2d 625 (Colo.1982).
The purpose of a treatment plan is to preserve the parent-child relationship by assisting the parent in overcoming the problems that led to the dependency adjudication. Its appropriateness is measured by the likelihood of success in reuniting the family, which must be assessed in light of the facts existing at the time of its approval. People in Interest of M.M., 726 P.2d 1108 (Colo.1986).
In determining whether termination is appropriate, the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. Thus, a trial court's findings and conclusions will not be disturbed on review if the record supports them. People in Interest of C.A.K., 652 P.2d 603 (Colo.1982).
The application of the doctrine of invited error is triggered by actions of a party during litigation. Horton v. Suthers, 43 P.3d 611, 618 (Colo.2002). "Invited error is a cardinal rule of appellate review applied to a wide range of conduct. It ... prevents a party from inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." Horton, supra, 43 P.3d at 618 (quoting Roberts v. Consolidation Coal Co., 208 W.Va. 218, 228, 539 S.E.2d 478, 488 (2000)). The doctrine is employed to protect the principles supporting the goals of judicial economy and integrity by allocating responsibility to the party that induced the error by a request that the court take a particular action or by acquiescence in conduct of the court or the opposing party. See Horton, supra, 43 P.3d at 619; Roberts, supra, 208 W.Va. at 228, 539 S.E.2d at 488.
Here, the trial court approved the treatment plan as appropriate following a dispositional hearing. At the hearing, the court found that "the treatment plan [was] agreed upon by all parties." At a subsequent review hearing, father again agreed that the terms of the plan were appropriate.
Approximately one year later at the termination hearing, father argued that the treatment plan was not appropriate because it did not specifically address his mental health needs. The trial court found that the parties conceded that father's mental health issues were not addressed in the plan and, during the course of the plan, father "engaged in acts that appeared to be attempts at suicide." However, the court noted there was no evidence that father had ever been diagnosed with a mental health ailment. The trial court further found with record support that father had "failed to object to the requirements of [the] treatment plan and [had] never requested that the treatment plan be modified." Father was represented by counsel throughout the proceedings.
By stipulating to the appropriateness of the treatment plan at the time of its adoption by the court, father acquiesced in any inadequacies of the plan. When a party acquiesces in the court's error, he or she is precluded from challenging the issue on appeal. See Horton, supra, 43 P.3d at 619-20 (acquiescence in court's hearing petition for writ of habeas corpus and granting relief sought warrants application of doctrine of invited error, which precludes challenge of issue on appeal); In re A.A., 327 Mont. 127, 112 P.3d 993, 997 (2005) (mother agreed to treatment plans and thus waived her argument that portions of plans were not appropriate by failing to object to them in timely manner).
Therefore, although the treatment plan did not at its inception specifically address father's mental health needs, by acquiescing in the plan father is precluded from arguing that it was not appropriate. Like the Montana Supreme Court, "[w]e will not put a district court in error for an action [in] which *1088 the appealing party acquiesced." In re A.A., supra, 112 P.3d at 997.
To the extent father argues the plan was rendered inappropriate by the manifestation of his mental health needs after the plan's inception, but prior to the termination hearing, we conclude that father's failure to timely request modification of the plan bars him from now raising this issue.
It is a parent's responsibility to secure compliance with and success of a treatment plan. People in Interest of L.A.C., 97 P.3d 363, 367 (Colo.App.2004). Therefore, it is incumbent upon the parent to bring any perceived deficiency in the plan to the trial court's attention prior to the termination hearing. Failing to do so, the parent cannot be heard to complain of his or her own inaction. Any other rule would permit a party to trifle with the courts. The party could remain silent and acquiesce in the conclusion of the proceedings if favorable and avoid the outcome if unfavorable.
Thus, other divisions of this court have concluded that termination was appropriate despite the parent's argument that changing circumstances rendered the plan inappropriate, where substantial evidence showed that the parent was not capable of properly caring for the child, and where either no modification was sought or the trial court had reviewed the appropriateness of the plan after its implementation and no issue as to inappropriateness was raised during the reviews. See People in Interest of C.R., 772 P.2d 672, 674 (Colo.App.1989); People in Interest of M.P., 690 P.2d 1300, 1302 (Colo.App.1984).
People in Interest of B.J.D., 626 P.2d 727 (Colo.App.1981), does not change this result. There, a division of this court held that it would be unconscionable to terminate a parent-child relationship based on a treatment plan that was so inappropriate that "[n]on-compliance was virtually assured and lack of success was a foregone conclusion," even though the parent did not object to the plan or seek modification. People in Interest of B.J.D., supra, 626 P.2d at 730. In B.J.D., there was no indication that the parent had stipulated to the appropriateness of the plan, and the trial court conceded that the plan had failed to address the facts existing at the time it was implemented. Under those circumstances, the division held that it would be unconscionable to terminate the parent-child relationship, concluding that an inappropriate treatment plan "does not become appropriate because the parent fails to object to it." People in Interest of B.J.D., supra, 626 P.2d at 730.
By contrast, here father stipulated to the appropriateness of the treatment plan. As such, it was incumbent upon father to bring any changed circumstances to the court's attention prior to the termination hearing. He failed to do so. To the extent that our holding conflicts with that of the division in People in Interest of B.J.D., supra, we decline to follow its reasoning.
Our conclusion that it is incumbent on the parent to bring forth any known deficiencies in the treatment plan prior to the termination hearing is bolstered by the General Assembly's directive "for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child." See § 19-1-102(1)(c), (1.6), C.R.S.2005; People in Interest of A.M.D., supra. This policy is best served by requiring parents to address known problems with the treatment plan before the termination hearing.
Further, while the purpose of a treatment plan is to reunite the family through the elimination of those factors that initiated state intervention, see People in Interest of C.R., supra, 772 P.2d at 673, in a proceeding for termination of the parent-child relationship, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. See § 19-3-604(3), C.R.S.2005; B.B. v. People, 785 P.2d 132 (Colo.1990).
Here, father became aware of his depression and suicidal ideation prior to the termination hearing. However, he did not seek modification of the treatment plan, nor did he bring his concerns to the attention of the court during the review hearing or at any other time prior to the termination hearing. Accordingly, we conclude that the trial court did not err in ordering termination despite *1089 father's argument that the treatment plan was inappropriate.

II.
Father next contends that the trial court erred in determining that he was an unfit parent and that the conduct or condition resulting in the unfitness was not likely to change within a reasonable time. In particular, father contends that the court failed to consider his potential for rehabilitation. We conclude that the trial court did not err in finding that father was unfit.
An unfit parent is one whose conduct or condition renders him or her unable to give a child reasonable parental care. Reasonable parental care requires, at a minimum, that the parent provide nurturing and protection adequate to meet the child's physical, mental, and emotional health needs. Section 19-3-604(2), C.R.S.2005; People in Interest of D.L.C., 70 P.3d 584 (Colo.App.2003).
In determining whether a parent's conduct or condition is unlikely to change within a reasonable time, the trial court may consider whether any change has occurred during the pendency of the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. People in Interest of D.L.C., supra. A reasonable time is not an indefinite time, and it must be determined by considering the physical, mental, and emotional conditions and needs of the child. See § 19-3-604(3), C.R.S. 2005.
The incarceration of a parent, by itself, may not operate as a forfeiture of parental rights in these circumstances. See § 19-3-604(1)(b)(III) C.R.S.2005; People in Interest of M.C.C., 641 P.2d 306 (Colo.App.1982). However, in determining whether the termination of parental rights is appropriate, the trial court has discretion to consider the length of the parent's incarceration, the nature of the parent's criminal conduct, the age of the children, and the time spent by the children in foster care. People in Interest of M.H., 10 P.3d 713 (Colo.App.2000); People in Interest of E.I.C., 958 P.2d 511 (Colo.App. 1998).
In cases concerning a child under the age of six, reasonable compliance with or success of the treatment plan cannot be found if:
(A) The parent has not attended visitations with the child as set forth in the treatment plan, unless good cause can be shown for failing to visit; or
(B) The parent exhibits the same problems addressed in the treatment plan without adequate improvement, including but not limited to improvement in the relationship with the child, and is unable or unwilling to provide nurturing and safe parenting sufficiently adequate to meet the child's physical, emotional, and mental health needs and conditions....
Section 19-3-604(1)(c)(I).
Here, the trial court found that father visited his children only a few times during the pendency of the case. In addition, the record establishes that father's younger child, M.S., was born prematurely and was hospitalized. During the time M.S. was hospitalized, father spent only about ten to fifteen minutes a day with him despite being provided housing adjacent to the hospital, which required, as a condition of residency, that he spend three hours per day visiting his child.
The court also found that father continued to exhibit the same problems that existed when the case commenced. The department presented testimony that when it intervened, father had problems concerning the use of illegal substances, ability to parent, and immaturity. Likewise, following that intervention, the adoption of a treatment plan, and the department's efforts in making services available to father, he continued to experience the same problems that led to the intervention. The record supports the trial court's finding that father failed to participate in random urinalysis testing, continued to have problems with the law, did not participate in counseling, failed to obtain employment or stable housing, and consistently had problems with substance abuse despite an intensive in-patient treatment program.
Based upon the department's evidence, the trial court also concluded that over the pendency of the case, father had become less dependable and less able to care for his *1090 children. He neglected both children by failing to visit; he demonstrated violent tendencies by orchestrating an assault on his brother while they were both in jail; and he continued to use drugs and alcohol excessively. Consequently, father was unable to meet the physical and emotional needs of his children and, as testified to by a supervisory caseworker, his behavior was unlikely to change in the near future.
Therefore, the trial court considered numerous factors in determining that father was unfit and in finding that his condition was unlikely to change within a reasonable time. Accordingly, given these considerations, and because the trial court's findings concerning compliance with and success of the treatment plan are supported by the evidence and comport with applicable law, we will not disturb them on review. See People in Interest of C.A.K., supra.
The judgment is affirmed.
Judge TAUBMAN and Judge CASEBOLT concur.