300 P.3d 911
The PEOPLE of the State of Colorado, PetitionerâAppellee,
In the Interest of S.NâV., a Child,
and
Concerning B.A.N., RespondentâAppellant.
No. 10CA2303.
Colorado Court of Appeals,
Div. III.
Dec. 22, 2011.

         [300 P.3d 912]

Douglas J. Friednash, City Attorney, Laura Grzetic Eibsen, Assistant City Attorney, Denver, Colorado, for PetitionerâAppellee.
Terry Ross, Guardian Ad Litem.
Susan P. Halloran, Littleton, Colorado, for RespondentâAppellant.
Opinion by Judge FURMAN.        B.A.N. (father) appeals the judgment terminating the parental relationship with his daughter, S.NâV. We affirm.
I. Introduction
        Father raises two arguments in support of his appeal: the juvenile court erred in finding (1) that he was unfit because the Department did not make reasonable efforts to rehabilitate him (father wanted a neuropsychological evaluation) and (2) that no less drastic alternative to termination existed. The nature of father's appeal is a challenge to the sufficiency of the evidence underlying the juvenile court's judgment terminating his parental rights.
         Our review of sufficiency claims is based on the settled principle that, at a termination hearing, the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are within the discretion of the juvenile court, and we will not disturb these conclusions unless they are so clearly erroneous as to find no support in the record. People in Interest of A.J.L., 243 P.3d 244, 250 (Colo.2010); 
        [300 P.3d 913]
People in Interest of C.A.K., 652 P.2d 603, 613 (Colo.1982). We adhere to such a principle because the juvenile court uniquely has the opportunity âto judge the credibility of the witnesses.â A.J.L., 243 P.3d at 249 (quoting C.R.C.P. 52).
         The Denver Department of Human Services (Department) and S.NâV.'s guardian ad litem (GAL) (collectively, the Department) initially contend we should not engage in such a review of the evidence supporting the reasonable efforts finding because father never âfiled any written motions complaining of the Department's reasonable effortsâ and never âsought a court hearing to address the issue.â The Department relies on opinions from other divisions of our court that barred a parent from challenging the sufficiency of the evidence supporting the juvenile court's finding that reasonable efforts were made to rehabilitate the parent. These opinions applied various estoppel doctrines because the parent acquiesced in, and subsequently failed to request modification of, his or her treatment plan prior to the termination hearing. See People in Interest of M.S., 129 P.3d 1086 (Colo.App.2005) (applying estoppel doctrine of invited error); see also People in Interest of D.P., 160 P.3d 351 (Colo.App.2007) (citing M.S. but applying estoppel doctrine of waiver).
         Estoppel doctrines generally bar a party from asserting a claim or right that contradicts what that party has said or done before or what has been legally established as true. Brian A. Garner, Black's Law Dictionary 624 (9th ed.2009).
        We hold that estoppel doctrines do not apply as a bar in this case. As we will discuss, father's acquiescence to his treatment plan at the dispositional hearing, and his subsequent failure to object to the services supporting the reasonable efforts to rehabilitate him, may not be used to bar our review of the evidence supporting the juvenile court's finding that the Department proved by clear and convincing evidence that reasonable efforts were unsuccessful in rehabilitating father. SeeÂ§ 19â3â604(2)(h), C.R.S.2011; see alsoÂ§ 19â1â103(89), C.R.S.2011 (âServices provided by a county or city and county in accordance with section 19â3â208 [C.R.S.2011] are deemed to meet the reasonable efforts standard.â). Before we address father's substantive challenges on appeal, therefore, we must consider why estoppel doctrines do not bar him from bringing those challenges.
II. Father's Challenges on Appeal
        To put this case in context, we begin with a few observations about father's treatment needs. To help father obtain custody of S.NâV. as a fit parent, the juvenile court adopted an appropriate treatment plan involving S.NâV. and father, requiring, inter alia, that father improve his parenting skills, demonstrate the ability to use appropriate communication and anger management skills (because of prior incidents of domestic violence), and attend visits with S.NâV. As part of the treatment plan, the court determined father needed a domestic violence evaluation and ordered the Department to perform such an evaluation of him. At the time, father did not object to that plan.
        Several months before the termination hearing, the juvenile court authorized a full neuropsychological evaluation of father.
        Instead of the full neuropsychological evaluation, the Department paid for a psychological evaluation of father. That evaluation revealed that he had suffered a traumatic brain injury in childhood; that he had a full scale IQ of 79âwhich put him in the borderline range of overall intellectual abilities; that he had a cognitive disorder; and that he had a generalized seizure disorder from his youth.
        Father's challenge to the juvenile court's reasonable efforts finding is based on the Department's decision not to provide him with a full neuropsychological evaluation. He contends this evaluation was necessary to determine whether appropriate services were being rendered to him.
        In its initial response to father's petition on appeal, the Department argued that father waived his right to challenge, on appeal, the juvenile court's reasonable efforts findings because he did not assert his request for a full neuropsychological evaluation before the termination hearing. To adequately address this response, we directed the parties to provide supplemental briefing. See
        [300 P.3d 914]
C.A.R. 3.4(j)(2) (âAfter reviewing the petition on appeal, any response, and the record, the Court of Appeals may ... set the case for supplemental briefing on issues raised by the parties....â).
A. Estoppel Doctrines
        In its supplemental brief, the Department urges us to apply the estoppel doctrines of invited error or forfeiture. While this position is supported by the holding in M.S., we decline to follow it. See People v. Wolfe, 213 P.3d 1035, 1036 (Colo.App.2009) (one division of court of appeals not bound by decision of another division).
        The Department's position is based on two seemingly contradictory premises. On the one hand, the Department argues that a parent invites error by not ârais [ing] the appropriateness of his treatment plan at the time of its adoption [invoking the invited error doctrine] or at any point thereafter [invoking the forfeiture doctrine], prior to the termination hearing.â
        On the other hand, the Department argues that, regardless of what a parent does before the termination hearing, the juvenile court maintains the âsolemn duty to find that each and every statutory criterion of termination has been proved by clear and convincing evidence,â which includes a finding that âreasonable efforts have been made to rehabilitate the parent.â
        The Department provides a solution to this contradiction by asking us to apply âplain errorâ review to a juvenile court's findings following a termination hearing when a parent fails to challenge the appropriateness of his or her treatment plan before that hearing. We disagree with the Department's underlying premiseâthat a respondent parent's failure to so challenge constitutes error. The constitutional and statutory due process requirements for a termination hearing place no duty on a respondent parent. That is because the petitioner (here, the Department) has the duty of proving, by clear and convincing evidence, the treatment plan's appropriateness. Therefore, we decline to apply plain error review.
1. Constitutional and Statutory Due Process
         When the State seeks to sever the parent-child legal relationship, it must employ âfundamentally fair procedures,â Santosky v. Kramer, 455 U.S. 745, 753â54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), because parents have a fundamental liberty interest in the âcare, custody, and management of their childâ that must be respected even if âthey have not been model parents or have lost temporary custody of their child to the State.â Id. at 753, 102 S.Ct. 1388.
         The procedures at the termination hearing, mandated by the Due Process Clause, ârequire[ ] that the state support the alleged grounds for termination by a standard of proof no less demanding than clear and convincing evidence.â People in Interest of A.M.D., 648 P.2d 625, 631 (Colo.1982). This elevated burden of proof in an adversarial hearing âadequately conveys to the factfinder the [necessary] level of subjective certainty about his factual conclusions,â Santosky, 455 U.S. at 769, 102 S.Ct. 1388, and helps alleviate âthe possible risk that a factfinder might decide to [deprive] an individual [of his or her liberty interest] based solely on a few isolated instances of unusual conduct [or] ... idiosyncratic behavior.â Id. at 764, 102 S.Ct. 1388 (quoting Addington v. Texas, 441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)).
         Thus,
        [o]nly when conditions have so deteriorated that ... a parent is deemed unfit when tested by demanding standards is a parent-child relationship to be terminated. Termination is an unfortunate but necessary remedy when all reasonable means of establishing a satisfactory parent-child relationship have been tried and found wanting. It is not a desired outcome for which the [Department] should strive from the inception of a dependency or neglect proceeding.
A.M.D., 648 P.2d at 640 (citation omitted).
        The statutory procedures for termination of parental rights in Colorado are governed by the ParentâChild Legal Relationship Termination Act of 1987 (the Act). Id. at 634.
        [300 P.3d 915]
The Act provides that, following the filing of a written motion alleging the factual grounds for termination, a separate hearing must be held to consider termination. Â§ 19â3â602, C.R.S.2011; A.M.D., 648 P.2d at 634. The termination hearing must be held no sooner than thirty days after the motion is filed. Â§ 19â3â602(1), C.R.S.2011. Prior to the hearing, a parent must be advised of his or her right to be represented by counsel, Â§ 19â3â602(2), C.R.S.2011, and, for the first time in the dependency and neglect process, an indigent parent has the right to have the court appoint âone expert witness of his own choosing whose reasonable fees and expenses ... shall be paid by the state of Colorado.â Â§ 19â3â607(1), C.R.S.2011.
        The statutory criteria for termination pursuant to section 19â3â604(1)(c), C.R.S.2011, require that, for the juvenile court to terminate parental rights, the petitioner must establish by clear and convincing evidence that an appropriate treatment plan approved by the court has not been successful in rehabilitating the parent, the parent is unfit, and the conduct or condition of the parent is unlikely to change within a reasonable time. SeeÂ§ 19â3â604(1)(c)(I)(III), C.R.S.2011; A.M.D., 648 P.2d at 634â35;People in Interest of S.M.A.M.A., 172 P.3d 958, 962 (Colo.App.2007).
        To determine whether a parent is unfit, the juvenile court must consider whether â[r]easonable efforts by child-caring agencies ... have been unable to rehabilitate the parent or parents.â Â§ 19â3â604(2)(h). âReasonable effortsâ means âthe exercise of diligence and careâ to reunify a parent with his or her children, and it includes â[s]ervices provided by a county or city and county in accordance with section 19â3â208.â Â§ 19â1â103(89).
        These services include, as relevant here, â[v]isitation services for parents with children in out-of-home placementâ and diagnostic and mental health services. Â§ 19â3â208(2)(b)(IV), (d)(V), C.R.S.2011; see Dep't of Human Servs. Reg. Nos. 7.303.1, 7.303.14, 7.310.1, 7.310.3, 12 Code Colo. Regs. 2509â4. In addition, these services âshall be available and provided, as determined necessary and appropriate by individual case plans.â Â§ 19â3â208(2)(b)(IV), (d)(V).
        â[I]ndividual case plans,â which must be âdeveloped with the input or participation of the family,â Â§ 19â3â209, C.R.S.2011, include services identified in a parent's treatment plan. See Dep't of Human Servs. Reg. Nos. 7.301.22, 7.301.24, 12 Code Colo. Regs. 2509â4.
        For a parent's âtreatment planâ to be âappropriate,â it must be âapproved by the courtâ and be âreasonably calculated to render the particular respondent fit to provide adequate parenting to the child within a reasonable time and ... relate[ ] to the child's needs.â Â§ 19â1â103(10), C.R.S.2011. The children's health and safety are the paramount concerns of the services identified in the treatment plan. Â§ 19â1â103(89); People in Interest of D.G., 140 P.3d 299, 302 (Colo.App.2006).
         Hence, in considering whether â[r]easonable efforts ... have been unable to rehabilitate the parent or parents,â the juvenile court must consider whether clear and convincing evidence supports the conclusion that a parent is unfit because (1) the services provided were appropriate to support the parent's treatment plan but (2) they were unsuccessful in accomplishing the treatment plan's purpose of rendering him or her a fit parent. In making such a finding, the juvenile court thereby satisfies the supreme court's due process requirement that âall reasonable means of establishing a satisfactory parent-child relationship have been tried and found wanting.â A.M.D., 648 P.2d at 640.
        Accordingly, the juvenile court in this case was obligated to evaluate father's key treatment issues (related to his cognitive disorders) and determine whether clear and convincing evidence supported the conclusion that he was unfit because (1) the visitation, diagnostic, and mental health services were appropriate but (2) they were unsuccessful in rendering him a fit parent.
2. The Invited Error Doctrine
        Nevertheless, relying on M.S., the Department contends that a parent in father's position is barred from obtaining appellate review of the juvenile court's finding at the termination hearing that âreasonable efforts 
        [300 P.3d 916]
have been unable to rehabilitate the parent,â when that parent either stipulates to or acquiesces in his or her treatment plan at the dispositional hearing. We disagree.
        In M.S., the father appealed a trial court's judgment terminating his parental rights, arguing (as he had at the termination hearing) that his treatment plan was not appropriate because it did not include a mental health component that addressed his suicidal ideations, undiagnosed depression, and self-medication with illegal substances. M.S., 129 P.3d at 1086. Applying the invited error doctrine, the division held that the father was barred from raising the issue on appeal because he had stipulated, at the dispositional hearing, to the plan's appropriateness. Id. at 1087.
         The invited error doctrine applies when a party invites or injects an error in the proceedings and later claims that the error should be a basis for reversal on appeal. See, e.g., People v. Wittrein, 221 P.3d 1076, 1082 (Colo.2009) (defendant invited witness to give the testimony that he claimed on appeal was impermissible); People v. Zapata, 779 P.2d 1307, 1308â09 (Colo.1989) (defendant drafted and tendered jury instruction that he claimed on appeal was legally insufficient); People v. Shackelford, 182 Colo. 48, 49, 511 P.2d 19, 20 (1973) (defendant elicited prejudicial evidence of separate crime from witness and then claimed on appeal that such evidence should not have been allowed).
         Invited error also occurs when a partyâbecause of tactics or trial strategyâaffirmatively consents to or acquiesces in a ruling of the trial court and then claims on appeal that the trial court erred in making such a ruling. See, e.g., Horton v. Suthers, 43 P.3d 611, 618â19 (Colo.2002) (defendant âexpressly acquiescedâ in court's hearing of habeas petition and then claimed on appeal that court erroneously decided merits); People v. Collins, 730 P.2d 293, 304â05 (Colo.1986) (defendant took position as matter of trial strategy that no heat of passion defense applied and then claimed on appeal that trial court should have instructed jury on such defense).
        We disagree with the M.S. division's application of the invited error doctrine, for several reasons. First, by stipulating to a treatment plan at a dispositional hearing, a parent does not inject error into the proceedings. Rather, because the parent and the Department share the mutual goal of preserving the family, see People in Interest of B.J.D., 626 P.2d 727, 730 (Colo.App.1981), the parent has every incentive to agree to and cooperate with the proposed treatment plan designed, with his or her participation, to accomplish that purpose. SeeÂ§ 19â3â209; see also Dep't of Human Servs. Reg. No. 7.301.22, 12 Code Colo. Regs. 2509â4. By not cooperating, a parent risks the Department pursuing termination.
        Moreover, it does not follow that a parent at a dispositional hearing would intentionally mislead the courtâbecause of tactics or trial strategyâby stipulating to a plan the parent considers inappropriate in an effort to create an appellate issue in the event parental rights are later terminated. An appropriate treatment plan is intended and designed to accomplish the parent's goal of avoiding a termination proceeding in the first instance. Notably, there was no evidence that the father in M.S. intentionally misled the court about his condition in order to gain some sort of an advantage over the Department.
        Second, invited error would not apply because the father in M.S. did not appeal the dispositional order, much less claim on appeal of the dispositional order that an inappropriate treatment plan should be a basis for reversal of that order. SeeÂ§ 19â1â109(2)(c), C.R.S.2011 (âAn order decreeing a child to be neglected or dependent shall be a final and appealable order after the entry of the disposition pursuant to section 19â3â508.â); see also Wittrein, 221 P.3d at 1082.7
        Third, although the father in M.S. âstipulat[ed] to the appropriateness of the treatment plan at the time of its adoption by the court,â 129 P.3d at 1087, he did not acquiesce in the appropriateness of the services ultimately provided. Rather, at the termination hearing he was merely arguing that additional mental health services would have rendered him a fit parentâa position that did not contradict his earlier position of preserving
        [300 P.3d 917]
his family. Thus, his stipulation did not legally establish, as true, that âall reasonable means of establishing a satisfactory parent-child relationship have been tried and found wanting.â A.M.D., 648 P.2d at 640.
        Fourth, we also observe that, when the original disposition does not terminate parental rights, the dispositional hearing serves a different purpose and requires a lower evidentiary burden than does the termination hearing. Thus, a parent's position at the dispositional hearing is not equivalent to, and differs in kind from, that parent's position at the termination hearing. For example:
        â¢ The collaborative process involved in the development of a case plan, which is designed to encourage parental commitment to work on treatment goals and engage in the services provided by the Department, see Child Welfare Information Gateway, U.S. Dep't of Health & Human Servs., Admin. for Children & Families, âThe Benefits of Family Engagementâ (2010), available at http:// www. childwelfare. gov/ pubs/ f_ fam_ engagement/ f_ fam_ engagement. pdf, stands in stark contrast to the adversarial nature of a termination hearing, which seeks permanently to sever the parent-child legal relationship. See Santosky, 455 U.S. at 753â54 [102 S.Ct. 1388].
        â¢ The Department's proposed treatment plan at a dispositional hearing is designed to achieve the mutual goal of parental reunification with the child. Â§Â§ 19â3â507(1)(b), 19â3â508(1)(e)(I), C.R.S.2011.
        â¢ The authors of reports that must be considered by the juvenile court at a dispositional hearing need not appear at that hearing; thus, they need not be examined or cross-examined under oath unless ârequested by the child, his parent or guardian, or other interested partyâ or by âthe court ... if it finds that the interest of the child so requires.â Â§ 19â1â107(2), C.R.S.2011; see alsoÂ§ 19â3â507(1)(a), C.R.S.2011.
        â¢ The burden of proof at a dispositional hearing is merely a preponderance of the evidence. People in Interest of L.B., 254 P.3d 1203, 1208 (Colo.App.2011); cf. A.M.D., 648 P.2d at 640 (âWhen a dependency or neglect proceeding is viewed in light of its primary purposeâas helpful and remedial in preserving and mending familial tiesâthe importance of permitting State intervention on a standard of proof lower than clear and convincing evidence becomes evident.â).
3. Doctrine of Forfeiture
         The Department also contends that a parent's subsequent failure to object to the treatment plan constitutes a forfeiture, rather than a waiver, of the parent's right to seek appellate review of the sufficiency of the evidence supporting the court's termination findings pursuant to section 19â3â604. We conclude it does not.
        âOne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in its forfeiture.â People v. Pauley, 42 P.3d 57, 59 (Colo.App.2001)(quoting United States v. Calverley, 37 F.3d 160, 162 (5th Cir.1994)); see United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)(â âNo procedural principle is more familiar ... than that a constitutional right,â or a right of any other sort, âmay be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.â â (quoting Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944))).
        The M.S. division implied that the father forfeited his right to challenge the treatment plan because, having stipulated to the plan, he did not later âbring any perceived deficiency in the plan to the trial court's attention prior to the termination hearing.â M.S., 129 P.3d at 1088. The division applied the forfeiture doctrine because â[i]t is a parent's responsibility to secure compliance with and success of a treatment plan.â Id.
        While we agree that the parent has a responsibility to comply with the terms of the treatment plan to avoid termination of parental rights, a treatment plan cannot be successful unless both the parent complies with it and it is itself appropriate to ârender 
        [300 P.3d 918]
the [parent] fit to provide adequate parenting to the child within a reasonable time and ... relates to the child's needs.â Â§ 19â1â103(10); see People in Interest of A.H., 736 P.2d 425, 428 (Colo.App.1987).
        In B.J.D., the division held that â[t]o justify the appropriateness of a treatment plan upon some theory of estoppel, or failure to object to its terms, makes no sense.â 626 P.2d at 730. The division reasoned that a plan that is inappropriate âto eliminate those factors which necessitated society's intrusion into the family in the first instanceâ does not become appropriate âbecause the parent fails to object to it.â Id. We agree with the division in B.J.D.
        The division in M.S. distinguished B.J.D. by highlighting the fact that â[i]n B.J.D., there was no indication that the parent had stipulated to the appropriateness of the plan, and the trial court conceded that the plan had failed to address the facts existing at the time it was implemented.â M.S., 129 P.3d at 1088. The Department contends that the M.S. division correctly placed such a burden on a respondent parent because that would allow the juvenile court to ârectify the purported errorâ and âit is the parent who is best able to voice concerns about the treatment plan's appropriateness.â
        The dispositional and review hearing statutes, however, place no such duty on a respondent parent. Moreover, as noted, the Act places on the petitioner the burden to prove, by clear and convincing evidence, that a parent is unfit because â[r]easonable efforts ... have been unable to rehabilitate the parent.â Â§ 19â3â604(2)(h).
        Thus, we cannot fault a parent for failing to assert an error in the treatment plan, which he or she had no duty to assert, to avoid forfeiting the constitutional and statutory right to have the juvenile court consider whether the petitioner met its constitutional and statutory burden of proof. See Santosky, 455 U.S. at 765, 102 S.Ct. 1388;see alsoÂ§ 19â3â604(2)(h).
        Accordingly, we conclude that a respondent parent's position regarding his or her treatment plan at the time of its adoption, or at any point thereafter prior to the termination hearing, is not equivalent to, or a substitute for, a juvenile court's finding at the termination hearing by clear and convincing evidence that the services provided to the respondent parent were appropriate but unsuccessful in rendering him or her a fit parent. See In re S.P.W., 707 S.W.2d 814, 826 (Mo.Ct.App.1986).
        Likewise, it would be fundamentally unfair to bar a respondent parent from challenging the sufficiency of the evidence underlying the juvenile court's findings at the termination hearing, because the parent cooperated with the Department at a time when he or she was encouraged to do so, yet neglected to assert errors that, under constitutional and statutory standards of due process, he or she had no duty to assert. SeeÂ§ 19â3â604(1); Santosky, 455 U.S. at 753â54, 102 S.Ct. 1388. To the extent D.P. relies on a statutory waiver analysis to bar a parent from challenging on appeal the sufficiency of the juvenile court's findings, we also decline to follow it. See Wolfe, 213 P.3d at 1036.
4. Application to this Case
        We note that the Department was fully aware of the juvenile court's authorization of a full neuropsychological evaluation for father and that it knew the potential value of such an evaluation. Therefore, based on the preceding discussion, we conclude father's failure to persist in his request for a full neuropsychological evaluation prior to the termination hearing did not estop him from challenging on appeal the adequacy of the juvenile court's findings as to the reasonable efforts to rehabilitate him.
        Now that we have concluded that estoppel doctrines do not bar father from bringing his substantive challenges on appeal, we turn to the merits of those challenges, beginning with the facts underlying father's positions in the earlier proceedings.
B. Proceedings Before the Termination Hearing
        This family came to the attention of the Department due to concerns of neglect regarding father's three children. One of those children, six-year-old S.NâV., was attending school, but the school reported that 
        [300 P.3d 919]
she was dirty and had difficulty concentrating. There was also concern that one of S.NâV.'s siblings was taken to the hospital for an alleged seizure that may have been related to child abuse.
        Although father did not live with S.NâV., the Department's petition in dependency and neglect reported he was âvery involvedâ in her life and supervised her when S.NâV.'s mother was unavailable.
        Father entered a âno-faultâ admission to the Department's petition, admitting the allegation in the petition that S.NâV. was âhomeless, without proper care, or not domiciled with a parent, guardian, or legal custodian through no fault of such child's parent, guardian, or legal custodian.â SeeÂ§ 19â3â102(1)(e), C.R.S.2011.
        At the dispositional hearing, the Department and S.NâV.'s GAL did not seek to terminate father's parental rights. Instead, in response to the Department's recommendation, the parties agreed that the Department would retain custody of S.NâV., but that father would both participate in periodic visitation and provide the Department with the contact information of his relatives so that the Department possibly could place the children with such relatives temporarilyâall with the end goal of father obtaining custody of S.NâV. (The Department subsequently placed S.NâV. with a paternal aunt in Pueblo.) Also at the dispositional hearing, as noted, the juvenile court adopted an appropriate treatment plan involving S.NâV. and father.
        Because father was not cooperating with the other parties, at a subsequent review hearing, the juvenile court ordered him to complete his domestic violence training, cease threatening and cursing at the caseworker, and comply with all treatment plan recommendations. The court otherwise left his treatment plan in effect. In the meantime, the Department afforded him therapy to improve his parenting and communication skills.
        The Department, however, subsequently moved to terminate father's parental rights as to S.NâV., alleging (in part) that his treatment plan was not successful.
        At a subsequent review hearing, because the Department was still pursuing a concurrent goal of reunification, seeÂ§ 19â3â508(7), C.R.S.2011 (â[e]fforts to place a child for adoption or with a legal guardian or custodian, including identifying appropriate in-state and out-of-state permanent placement options, may be made concurrently with reasonable efforts to preserve and reunify the familyâ), the juvenile court granted the Department's request for a three-month continuance to give father more time to complete his treatment plan.
        Then, at the hearing set for the Department's termination motion, the court (for reasons not reflected in the record) ordered the Department to pay for a psychological evaluation of father. The court also authorized a full neuropsychological evaluation if necessary. As a result, the termination hearing was continued a second time.
        The Department, however, declined to provide father the full neuropsychological evaluation because it could not afford to pay for it. Instead, it paid for the psychological evaluation discussed previously.
C. The Termination Hearing
        The juvenile court ultimately held a two-day termination hearing. At that hearing, the psychologist who performed the psychological evaluation of father testified that, based on both father's cognitive disorder diagnosis and his seizure disorder that had been occurring since he was nine years old, his treatment plan providing visitations with S.NâV. and therapy to address parenting skills was appropriate.
        After the hearing, the juvenile court terminated father's parental rights as to S.NâV. âby clear and convincing evidence standard of proof.â The court found an appropriate treatment plan had been adopted for father and determined that, despite his recent efforts to comply with his treatment plan, father was unfit and unlikely to become fit within a reasonable period of time; that S.NâV. had significant special needs and needed permanence; and that no less drastic alternative to termination existed. The court also concluded the adoption of S.NâV. by the 
        [300 P.3d 920]
paternal aunt who originally took S.NâV. into her home was a possibility, and it requested that the Department consider whether the aunt was a viable placement.
D. The Department's Reasonable Efforts to Rehabilitate
         Father first contends the juvenile court erred in finding that he was unfit because the Department did not make reasonable efforts to rehabilitate him. He argues that the Department's âfailure to perform a neuropsychological evaluation deprived [the Department] of information necessary to know whether [it] had implemented a reasonable treatment plan.â He contends the juvenile court âorderedâ a full neuropsychological evaluation for this very reason. We disagree.
        We note that the record does not reflect the juvenile court ordered a full neuropsychological evaluation as part of the treatment plan. The court, as evidenced by its minute order, merely authorized the Department to perform such an evaluation. The Department, however, chose for budgetary reasons merely to perform the psychological evaluation, which took father's brain injury into account in determining his level of cognitive functioning.
        A licensed professional counselor, who had a doctoral degree in psychology, testified that she had conducted the psychological evaluation of father to determine the extent, if any, that his cognitive difficulties would hinder his ability to parent.
        Although father argues the full neuropsychological evaluation could have increased the likelihood of success of the treatment plan, the Department introduced into evidence the psychological evaluation that documented father's condition and history. The juvenile court's termination order reflects that the court considered this evaluation to be sufficient. We see no reason to disturb the court's finding. A.J.L., 243 P.3d at 250.
        We therefore conclude the juvenile court did not err in finding that clear and convincing evidence showed an appropriate treatment plan was unsuccessful in rendering father a fit parent.
E. No Less Drastic Alternative
         Father also contends the juvenile court erred in finding that no less drastic alternative to termination existed. We disagree.
        A juvenile court must consider and eliminate less drastic alternatives before entering an order terminating the parent-child legal relationship under section 19â3â604(1)(c). See People in Interest of D.BâJ., 89 P.3d 530, 531 (Colo.App.2004)(this requirement is implicit in the statutory scheme). In making this determination, the court must give primary consideration to the physical, mental, and emotional conditions and needs of the child. Â§ 19â3â604(3), C.R.S.2011.
         Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption. People in Interest of Z.P., 167 P.3d 211, 214 (Colo.App.2007).
        Father's therapist and caseworker testified that termination of parental rights was appropriate, that no less drastic alternatives existed, and that adoption was in S.NâV.'s best interests.
        The paternal aunt testified that S.NâV. lived with her and had developed a close relationship with her other children. She also testified that she wanted to adopt S.NâV. The juvenile court discussed with the paternal aunt placement through allocation of parental responsibilities or adoption, and she confirmed that she wanted to adopt S.NâV. SeeÂ§ 19â5â203(1)(a), C.R.S.2011 (âA child may be available for adoption only upon ... [an] [o]rder of the court terminating the parent-child legal relationship....â).
        Because the record supports the juvenile court's findings, we conclude the court did not err in finding that clear and convincing evidence showed no less drastic alternative to termination existed. See A.J.L., 243 P.3d at 250.
        The judgment is affirmed.
Judge ROY and Judge LICHTENSTEIN concur.