25CA0043 Peo in Interest of ED-C 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0043
Adams County District Court No. 23JV30185
Honorable Caryn A. Datz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.D-C., a Child,

and Concerning K.A.C-P.,

Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by CHIEF JUDGE ROMÁN
Lipinsky and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Heidi Miller, County Attorney, Deborah Kershner, Assistant County Attorney, Westminster, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     K.A.C-P. (mother) appeals the judgment terminating her parent-child legal relationship with E.D-C. (the child). Among other arguments, mother asserts that the juvenile court erred by finding that her treatment plan was appropriate. We agree, reverse the judgment, and remand the case to the juvenile court for further proceedings consistent with this opinion.

## I.     Background

¶ 2     In October 2023, the Adams County Human Services Department alleged in a petition in dependency or neglect that mother had given birth to a substance-exposed child. Mother admitted the allegations, and the juvenile court adjudicated the child dependent or neglected. After a dispositional hearing, the juvenile court adopted a treatment plan for mother that required her to (1) address her substance abuse issues; (2) participate in family time; and (3) cooperate with the Department and treatment providers.

¶ 3     In August 2024, the Department moved to terminate mother's parental rights. The juvenile court held an evidentiary hearing in December 2024. After hearing the evidence, the juvenile court

1

granted the motion and terminated the parent-child legal relationship between mother and the child.

## II. Appropriate Treatment Plan

¶ 4 Mother asserts that her treatment plan was inappropriate because it should have included, but did not include, a domestic violence (DV) component. We agree.

### A. Applicable Law, Standard of Review, and Preservation

¶ 5 A juvenile court may terminate parental rights if it finds, among other things, that the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful. § 19-3-604(1)(c)(I), C.R.S. 2024. Whether the juvenile court erred by terminating parental rights under section 19-3-604(1)(c) presents a mixed question of fact and law. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. We review the court's factual findings for clear error but review its legal conclusions de novo. *Id.*

¶ 6 The purpose of a treatment plan is to preserve the parent-child legal relationship by assisting the parent in overcoming the problems that required the government's intervention. *K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006). A treatment plan is

2

appropriate if it is reasonably calculated to render the parent fit to provide adequate parenting to the child within a reasonable time and relates to the child's needs. § 19-1-103(12), C.R.S. 2024.

¶ 7     The Department and guardian ad litem (GAL) assert that mother's appellate argument is not properly before us because she invited the error, or in the alternative, she waived or forfeited her right to challenge the appropriateness of the treatment plan. *See People v. Rediger*, 2018 CO 32, ¶¶ 34, 39-40 (discussing the doctrines of invited error, waiver, and forfeiture). Although the holdings in *People in Interest of D.P.*, 160 P.3d 351, 354 (Colo. App. 2007), and *People in Interest of M.S.*, 129 P.3d 1086, 1087-88 (Colo. App. 2005), support their position, we decline to follow those opinions. *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 (noting that one division of the court of appeals is not bound by the decision of another division). Rather, we are persuaded by the analysis in *People in Interest of S.N-V.*, 300 P.3d 911, 913-18 (Colo. App. 2011), which concludes, among other things, that the "estoppel doctrines" of invited error, waiver, and forfeiture do not bar a parent in a dependency or neglect proceeding from bringing substantive challenges to the sufficiency of the evidence. As the division noted

in *S.N-V.*, "we cannot fault a parent for failing to assert an error in the treatment plan, which he or she had no duty to assert, to avoid forfeiting the constitutional and statutory right to have the juvenile court consider whether the petitioner met its constitutional and statutory burden of proof." *Id.* at 918. We therefore reach the merits of mother's claim.

### B.  Relevant Facts and Applicable Law

¶ 8 As noted above, at a dispositional hearing, the juvenile court adopted a treatment plan for mother that did not include a DV component. However, at a review hearing conducted about nine months later, the GAL explained that the "the power and control dynamic" between mother and father had been "discussed repeatedly in family team meetings and staffing," and the GAL "want[ed] to make sure that those [issues were] addressed." Mother's counsel said that she "share[d] some of the concerns" about DV and would "follow up with the parties and with [her] client to see" whether the treatment plan needed to be amended to include a DV component. No one ever moved to amend the treatment plan, however, and the juvenile court did not address this issue again until the termination hearing.

¶ 9     At the termination hearing, the caseworker testified that she, too, had concerns about DV because mother had been "put in situations where she was being controlled by" father. She said that her concerns were based on mother's reports that she felt "unsafe" at times, as well as the caseworker's telephone calls with mother in which father would "hop in" and listen to their conversations. The caseworker also testified that mother never asked for DV services — even when the caseworker offered those services to her — and mother continued to deny "that she was in a DV relationship." Nonetheless, the caseworker opined that mother could not be successful without addressing DV.

¶ 10    In closing argument, mother's counsel maintained that the Department failed to make reasonable efforts because it did not provide mother with DV services. The juvenile court disagreed because (1) DV was not an initial concern and only arose much later in the case and (2) mother refused to provide the caseworker with any information to substantiate those concerns. However, the juvenile court did not directly address whether mother's treatment plan was appropriate without a DV component.

¶ 11    Mother asserts that the juvenile court erred by finding that the treatment plan was appropriate because the Department (1) knew about DV concerns from the beginning of the case but did not propose a treatment plan with a DV component and (2) did not request to amend the treatment plan, even though the professionals in the case identified DV as an issue that needed to be addressed. Although we are not persuaded that the Department knew about DV from the case's inception, we nevertheless conclude that the juvenile court erred by finding that the treatment plan was appropriate. *Compare People in Interest of B.C.*, 122 P.3d 1067, 1071 (Colo. App. 2005) (We measure the appropriateness of a treatment plan by assessing it "in light of the facts existing at the time of the plan's approval."), *with People in Interest of Z.P.S.*, 2016 COA 20, ¶ 26 ("[C]hanged circumstances may render a treatment plan, previously approved at a dispositional hearing, no longer appropriate.").

¶ 12    Notably, the record shows the Department knew or had reason to know before the termination hearing that mother was involved in a DV relationship, but it never raised the issue or asked to amend the treatment plan. *See People in Interest of S.L.*, 2017 COA 160,

¶ 9 (noting that, to satisfy the reasonable efforts obligation, a department must develop an appropriate treatment plan). We recognize that mother denied DV for most of the case, but her denial did not relieve the Department of its duty to propose an appropriate treatment plan. Regardless of mother's position, if the Department believed that a DV component was necessary, it should have asked to amend the treatment plan and presented the juvenile court with evidence of the DV. *Cf. People in Interest of L.M.*, 2018 COA 57M, ¶ 51 (noting that a court may require treatment "when it is warranted by the record before the court").

¶ 13 Nor did mother's denial of DV absolve the Department of its burden to establish, by clear and convincing evidence, that the treatment plan was appropriate. *See S.N-V.*, 300 P.3d at 914 (The department "has the duty of proving, by clear and convincing evidence, the treatment plan's appropriateness."). As noted, the caseworker testified that mother could not become fit without addressing concerns about DV. And the juvenile court agreed that, had it known about DV sooner, it would have amended the treatment plan to include a component addressing it. In other words, the record shows that the treatment plan — absent a DV

component — was not reasonably calculated to render mother fit to provide adequate parenting to the child within a reasonable time. *See People in Interest of K.B.*, 2016 COA 21, ¶¶ 13, 23 (remanding to the juvenile court for a determination whether "the safety concerns about domestic violence were adequately addressed" during the case).

¶ 14    Finally, we disagree with the Department and GAL's assertion that any error associated with the juvenile court's failure to amend the treatment plan to include a DV component was harmless. *See* C.A.R. 35(c) (allowing an appellate court to "disregard any error or defect not affecting the substantial rights of the parties"). Specifically, they contend that the error is harmless because mother had not complied with the other aspects of her treatment plan. To be sure, under some circumstances, a parent's failure to comply with certain components of a treatment plan may render harmless an error associated with a different component. *See People in Interest of E.S.*, 2021 COA 79, ¶ 79 (recognizing that an error related to the lack of family time might be harmless "in light of [a parent's] noncompliance with other parts of [the] treatment plan"). In this case, however, the record suggests that mother's inability to

address her DV relationship was a barrier to her compliance with the other components of her treatment plan. Said another way, if mother had received treatment for DV, then she may have been able to comply with the other components of her plan and become a fit parent. We therefore conclude that the juvenile court's error is not harmless.

¶ 15 In sum, because mother did not have an appropriate treatment plan, the juvenile court erred by finding that the Department had established the termination criterion in section 19-3-604(1)(c)(I) by clear and convincing evidence.

## III. Other Contentions

¶ 16 Mother also contends that the juvenile court erred by finding that (1) the Department made reasonable efforts; (2) she could not become fit within a reasonable time; and (3) there was no less drastic alternative to termination. Because we have concluded that the judgment must be reversed so the juvenile court can adopt an appropriate treatment plan for mother, we need not address these other contentions.

## IV. Disposition

¶ 17    The judgment is reversed, and the case is remanded to the juvenile court for further proceedings consistent with this opinion.

JUDGE LIPINSKY and JUDGE LUM concur.