22CA1333 Peo v Lucero 10-09-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1333
City and County of Denver District Court No. 20CR1660
Honorable Ericka F.H. Englert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lincoln Joshua Lucero,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 9, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1	Defendant, Lincoln Joshua Lucero, appeals the judgment of conviction entered after a jury found him guilty of second degree assault, three counts of possession of a weapon by a previous offender (POWPO), and prohibited use of a weapon. He also appeals the sentence the trial court entered after adjudicating him a habitual offender.

¶ 2	On appeal, Lucero contends that (1) the evidence was insufficient to support his conviction for second degree assault; (2) the trial court erred by limiting his cross-examination of the victim; (3) the trial court didn't conduct a proper abbreviated proportionality review of his habitual sentence; (4) the trial court reversibly erred by ordering restitution after the prosecution didn't present the restitution information it had access to at the time of sentencing; and (5) the cumulative effect of these errors requires reversal of his convictions. We agree with the third contention but reject the other contentions. Accordingly, we affirm the judgment in part and reverse it in part, and we remand the case for the trial court to conduct a new abbreviated proportionality review.

1

## I.    Background

¶ 3      In February 2020, Lucero was at a bar near downtown Denver. The victim, S.V., and his family were also there, though they didn't know Lucero.  Late in the evening, security cameras captured the following events as Lucero was leaving the bar.

¶ 4      Lucero walked by and pointed a finger at the victim, who began to follow him.  Lucero walked outside, pulled out a gun, and turned back toward the door just before the victim came outside. Lucero aimed the gun at the victim, who continued following him. As the victim walked toward Lucero, Lucero took a step back, lowered the gun, and then raised the gun again and shot the victim in the thigh, seriously injuring him.

¶ 5      Lucero was charged with first degree assault, three POWPO counts, and three habitual criminal counts.  At trial, his counsel requested an instruction on prohibited use of a weapon while intoxicated as a lesser nonincluded offense of the POWPO charges.

¶ 6      After a bifurcated trial, a jury found Lucero guilty of all offenses except for first degree assault, instead finding him guilty of the lesser included offense of second degree assault, and the trial court then adjudicated Lucero a habitual offender.  The court

sentenced Lucero to a total of thirty-two years in the custody of the Department of Corrections (DOC).

¶ 7   This appeal followed.

## II.   Sufficiency of the Evidence

¶ 8   Lucero first contends that the prosecution failed to present sufficient evidence to support his conviction for second degree assault (recklessly causing serious bodily injury with a deadly weapon).  Specifically, he asserts that the evidence was insufficient to negate his claim of self-defense and establish that he acted recklessly.  We disagree.

### A.   Standard of Review and Applicable Law

¶ 9   We review claims challenging the sufficiency of the evidence de novo, determining whether the evidence presented was sufficient in both quantity and quality to support the defendant's conviction. *McCoy v. People*, 2019 CO 44, ¶ 63.  In doing so, we assess whether the evidence, viewed in the light most favorable to the prosecution, supports a reasonable conclusion that the defendant is guilty beyond a reasonable doubt.  *People v. Tomaske*, 2022 COA 52, ¶ 17.  However, an appellate court may not "serve as a thirteenth juror and consider whether it might have reached a different conclusion

than the jury." *People v. Harrison*, 2020 CO 57, ¶ 33. Thus, we will disturb the verdict only if, despite drawing every reasonable inference in favor of the prosecution, the record is unsubstantial and insufficient to support a guilty verdict beyond a reasonable doubt. *Clark v. People*, 232 P.3d 1287, 1291-92 (Colo. 2010); *People v. Thomas*, 2021 CO 84, ¶ 10.

¶ 10      As relevant here, a person commits second degree assault if they "recklessly cause[] serious bodily injury to another person by means of a deadly weapon." § 18-3-203(1)(d), C.R.S. 2025.

¶ 11      The use of physical force in defense of oneself is governed by section 18-1-704, C.R.S. 2025. When a defendant raises self-defense with respect to a crime requiring recklessness, self-defense is not an affirmative defense; instead, it is a traverse that negates the mental state element because it's impossible for a person to act both recklessly and in self-defense. *People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011); *People v. Luna*, 2020 COA 123M, ¶¶ 10-11. Self-defense requires a person to act reasonably, *see* § 18-1-704(1), while recklessness requires a person to act with conscious disregard of a substantial and unjustifiable risk, *see* § 18-1-501(8), C.R.S. 2025.

## B.     Analysis

¶ 12     Lucero's theory of defense at trial was that he acted in self-defense when he shot the victim in the leg outside the bar.  His counsel argued that, because of his chronic post-traumatic stress disorder (PTSD), he is "always scanning for a threat" and that's what he perceived the victim to be when the victim continued walking toward him.  Accordingly, defense counsel theorized that Lucero used a degree of force necessary to defend himself from what he reasonably believed to be the use or imminent use of unlawful force by the victim.

¶ 13     We conclude that the evidence presented at trial is sufficient for the jury to have rejected Lucero's claim of self-defense and found that he acted recklessly.  In particular, the witness testimony and video surveillance footage supports the following:

- Lucero pointed his finger at the victim, goading the victim to follow him.

- Lucero cocked his gun as he walked out of the bar and turned back to face the door just before the victim exited.

- As soon as the victim walked out of the bar, unarmed, Lucero pointed the gun at him.

- As the victim continued to walk toward Lucero, Lucero shot him in the leg, causing serious bodily injury.

¶ 14     While there was conflicting evidence as to whether Lucero may have reasonably believed he was acting in self-defense due to his PTSD diagnosis and the circumstances of the encounter, it was up to the jury — not us — to resolve such conflicts. *See People v. Perez*, 2016 CO 12, ¶ 31 ("A court must not invade the province of the jury by second-guessing its conclusion when the record supports the jury's findings.").

### III.     Limitation of Cross-Examination

¶ 15     Lucero next contends that the trial court abused its discretion by limiting his cross-examination of the victim following a jury question. He further argues that this error implicated his right to confront witnesses and present relevant evidence to support his defense. We aren't persuaded.

### A.     Additional Facts

¶ 16     During redirect examination, the prosecutor asked the victim, "Why are you going towards [Lucero]?" The victim answered, "I didn't realize it was a serious situation."

¶ 17 Following this testimony, the jury asked the victim, "Why was someone who was pointing a gun at you not a serious situation?" The victim responded, "I've never been in a situation like that before. Didn't think anything was going to happen."

¶ 18 Defense counsel requested a sidebar discussion. Initially, she argued that the victim's response "opened the door to at least asking if he's had assaults previously or fights in public previously," noting that he had multiple assault convictions. After the prosecutor disagreed about the meaning of the victim's response, defense counsel indicated that she could "ask a simple clarifying question if he meant that he's never been in that situation where he's had an altercation or never been in that situation where a gun has been pointed at him" and that "[i]f he says that he's never had an altercation, then clearly that's incorrect." The trial court permitted defense counsel to ask the victim follow-up questions, indicating that the questions should not directly lead the victim into opening the door but should be phrased so as to inquire what he meant by his earlier response. Defense counsel didn't object.

¶ 19 Defense counsel then engaged in the following examination of the victim:

> Q. [I]n response to one of the questions by the jurors, you said you had never been in that situation before. What did you mean by that?
>
> A. I guess a dangerous situation.
>
> Q. What do you mean by "dangerous"?
>
> A. The possibility I could be hurt.
>
> Q. Hurt by?
>
> A. Hurt by being shot.

¶ 20 Defense counsel didn't raise any further objections or request permission to ask any further questions on the issue.

### B. Standard of Review and Applicable Law

¶ 21 The Confrontation Clauses of the United States and Colorado Constitutions guarantee a criminal defendant's right to cross-examine prosecution witnesses. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Carter*, 2015 COA 24M-2, ¶ 30.

¶ 22 Nonetheless, a trial court has "wide latitude" to place reasonable limits on the nature and scope of cross-examination. *People v. Margerum*, 2018 COA 52, ¶ 25, *aff'd on other grounds*, 2019 CO 100; *Merritt v. People*, 842 P.2d 162, 166 (Colo. 1992). We review a court's limits on cross-examination, like other evidentiary rulings, for an abuse of discretion. *People v. Morse*, 2023 COA 27,

¶ 42. "While the court has discretion to limit cross-examination, it is constitutional error to limit excessively a defendant's cross-examination." *Margerum*, ¶ 30; *accord Carter*, ¶ 30.

### C.  Preservation

¶ 23   The People assert that Lucero preserved the issue of whether the victim's response opened the door to examination about his prior convictions but didn't preserve the issue of whether excluding that evidence violated his right to confrontation.  We conclude that Lucero didn't preserve either issue.  *See People v. Backus*, 952 P.2d 846, 850 (Colo. App. 1998) ("[W]e may choose to accept, but we are not bound by, the concessions of counsel regarding [the appellate record's] contents or the inferences that properly may be drawn from it.").

¶ 24   It is true that defense counsel initially requested permission to cross-examine the victim about his previous assault convictions. But she thereafter modified her request, suggesting that she could simply ask the victim to clarify his earlier answers and that she would seek further follow-up only if, in his clarification, he indicated that he had never been in an altercation before.  But the victim's clarification did not indicate that he'd never been in an

altercation before. And afterward defense counsel didn't lodge any objection or request permission to ask any further questions. Thus, counsel didn't preserve an objection to any limitation of the questioning.

¶ 25     Because Lucero didn't preserve his appellate arguments, our review is for plain error. *See People v. Campos*, 2015 COA 47, ¶ 29. An error is plain when it is obvious and is so substantial as to "undermine[] the fundamental fairness of the trial itself [and] cast serious doubt on the reliability of the judgment of conviction." *People v. Crabtree*, 2024 CO 40M, ¶ 43 (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

## D.     Analysis

¶ 26     Lucero asserts that the trial court erred by not permitting defense counsel to cross-examine [the victim] as to "whether he has had assaults previously or fights in public previously or whether he has had altercations with other people before in order to protect Mr. Lucero's constitutional rights to a fair trial, impartial jury, to cross-examine witnesses, and to present a defense."

¶ 27    We conclude that the trial court didn't err — let alone plainly err — to the extent that it prevented defense counsel from questioning the victim about his prior assault convictions.

¶ 28    The trial court acted within its discretion by allowing defense counsel, at her own request, to ask the victim follow-up questions about his response that he hadn't "realize[d] it was a serious situation."  When this examination revealed that the victim meant he'd never had a gun pointed at him before, the court again acted within its discretion to the extent that it concluded the victim hadn't opened the door to questioning about his prior assault convictions.  Once the follow-up questioning confirmed that the victim wasn't suggesting he'd never been in an altercation before, there was nothing misleading about his testimony and, thus, no reason to find the door had been opened to questioning about the earlier convictions.  *See People v. Heredia-Cobos*, 2017 COA 130, ¶ 20 ("The concept of 'opening the door' represents an effort by courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by the selective presentation of facts that, without being elaborated or placed in context, create an

11

incorrect or misleading impression." (quoting *People v. Murphy*, 919 P.2d 191, 195 (Colo. 1996))).

¶ 29   Therefore, we conclude that the trial court didn't plainly err to the extent that it limited Lucero's examination of the victim.

## IV. Proportionality Review

¶ 30   Lucero also contends that the trial court didn't conduct a proper abbreviated proportionality review to determine whether his habitual offender sentence was disproportionate to the nature and severity of his offenses. Specifically, Lucero contends that the trial court erred by (1) concluding that some of his predicate offenses were per se grave or serious and (2) failing to consider the harshness of the penalty. We agree with Lucero's second contention. Accordingly, without addressing his first contention, we reverse this portion of the judgment and remand the case for the trial court to conduct a new abbreviated proportionality review in accordance with the principles set forth in *Wells-Yates v. People*, 2019 CO 90M.

## A.     Additional Facts

¶ 31     At the sentencing hearing, after adjudicating Lucero a habitual offender, the trial court conducted the following abbreviated proportionality review:

> On Count 5, Mr. Lucero was previously convicted of attempted murder, which is a class 3 felony, in Arapahoe County in 2009. And as to that count, the Court finds that the underlying offense was a grave and serious crime and that it is, by case law, a "per se" grave and serious crime, as well as the fact that it involved weapons and a victim.
>
> Likewise, with regard to Count Number 6, we have . . . illegal discharge of a firearm, a class 5 felony, from Larimer County in 1999 . . . with a conviction in 2000.  Here, although there may be not be case law determining whether or not illegal discharge of a firearm is a grave and serious offense, the Court finds that for the purposes of today's sentencing, that it is a grave and serious offense and that it involves a firearm.  And, in addition, the underlying circumstances and facts demonstrate that weapons were involved, as well as victims, making the offense grave or serious.
>
> On Count 7, the charge of menacing in the Denver case in 1997, again, the Court finds that, by case law, this is a grave and serious offense for the purposes of this proportionality review.
>
> The case in question also involves a firearm, as well as a victim who was shot and suffered

13

injury.  The defendant was found by the jury to be the person who shot the victim in this case.

¶ 32    The court went on to sentence Lucero to a total of thirty-two years in the custody of the DOC.  The court explained its reasoning for the sentence as follows:

> Now, the reason why I am sentencing Mr. Lucero in this manner is: I sat through the trial.  The Court presided over the trial in this case, and . . . the Court finds that the evidence at trial supported the conviction.
>
> The Court . . . has very serious concerns regarding Mr. Lucero's conduct in this case, as well as conduct from prior cases.  However, I've also reviewed the mitigation report, and I understand that Mr. Lucero has been in and out of prison since he was 16 years old, and that he is now taking steps in the jail to be a model inmate . . . .
>
> And, Mr. Lucero, you have a very serious pattern of committing extensive crimes that involve weapons and shooting of people, and I don't want to minimize that at all.  However, I do want to encourage you to continue on in the path that it seems that you have taken now in making some changes in your life.
>
> I realize that you're going to have to continue on in the [DOC] to make those changes, and that's a difficult place to do that.  But it will be up to you, and I'm going to give you the opportunity to do that.  You also are at an age when you have to make some very serious decisions about how you want to conduct yourself in the future.

That's the basis for my sentence in [this case].

¶ 33 Immediately thereafter, the court referred back to the proportionality of the sentence:

> The Court finds, based on the proportionality review that I stated, that the criminal sentence imposed in this matter — habitual criminal sentence is not grossly disproportionate.

### B. Standard of Review and Applicable Law

¶ 34 We review de novo whether a sentence is constitutionally proportionate. *Sellers v. People*, 2024 CO 64, ¶ 16.

¶ 35 The United States and Colorado Constitutions prohibit "extreme sentences that are 'grossly disproportionate' to the crime." *Wells-Yates*, ¶¶ 5, 10 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)); *see* U.S. Const. amend. VIII; Colo. Const. art. II, § 20. In determining whether a sentence is grossly disproportionate to the crime, a trial court first conducts a two-step abbreviated proportionality review. *Wells-Yates*, ¶¶ 10-11.

¶ 36 First, the court must consider the gravity or seriousness of the offense. *Id.* at ¶ 11. For a habitual sentence like this one, this means considering the gravity or seriousness of the triggering

15

offense and each of the predicate offenses. *Id.* at ¶ 23. If any of the offenses are not per se grave and serious — meaning that, based on their elements, they don't necessarily involve grave or serious conduct — this step involves, as to each offense, consideration of the magnitude of the crime; whether it is a lesser included offense or the greater inclusive offense; whether it involves a completed act or an attempt to commit an act; whether the defendant was a principal or an accessory after the fact; what the defendant's motive was; and whether the defendant's acts were negligent, reckless, knowing, intentional, or malicious. *Id.* at ¶¶ 12-13, 23, 63.

¶ 37     Second, the court must consider the harshness of the penalty imposed. *Id.* at ¶ 14. This includes consideration of parole eligibility, which may reduce the period of confinement and render the penalty less harsh. *Id.* If there are multiple triggering offenses, the court has to consider the sentence imposed for each sentence. *Id.* at ¶ 24. "As to each sentence, the inquiry is whether the corresponding triggering offense and the predicate offenses, considered together, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate." *Id.*

¶ 38    Only if the abbreviated proportionality review gives rise to an

inference of gross disproportionality must the court conduct an

extended proportionality review, in which the court compares the

sentence to sentences for other crimes in the same jurisdiction and

sentences for the same crime in other jurisdictions.  *Id.* at ¶¶ 15-17.

### C.    Analysis

¶ 39    Without addressing whether the trial court classified Lucero's

predicate offenses as per se grave and serious or, if so, whether it

was proper to do so, we conclude that the court's abbreviated

proportionality review was inadequate because it didn't address the

harshness of the penalty.

¶ 40    The trial court conducted the first subpart of an abbreviated

proportionality review, considering the gravity or seriousness of

Lucero's predicate and triggering offenses, but nowhere did the

court analyze the harshness of the penalty.  Our supreme court has

made clear that "it would be improper for a court to skip the second

subpart of an abbreviated proportionality review and neglect to

consider the harshness of the penalty."  *Id.* at ¶ 27; *see also People

v. Wright*, 2021 COA 106, ¶ 84 ("[T]he court's apparent belief that it

need not also consider the harshness of the penalty in an

17

abbreviated proportionality review is inconsistent with the supreme court's guidance in *Wells-Yates*."); *People v. Tran*, 2020 COA 99, ¶ 102 (remanding for a new abbreviated proportionality review because, among other things, "after concluding that [the defendant] had four per se grave and serious offenses, it appears that the trial court did not analyze the harshness of [the defendant's] sentence").

¶ 41 True, the trial court did explain its reasoning for imposing the sentence, following the standard sentencing considerations provided in section 18-1.3-401(1)(b)(I), C.R.S. 2025, including the nature and elements of the offense, the offender's character and record, and any aggravating or mitigating circumstances. But what it did not do is "assess[] the harshness of the penalty, . . . tak[ing] into account both the length of the sentence and parole eligibility." *People v. Lopez*, 2025 COA 73, ¶ 12; *accord Wells-Yates*, ¶¶ 14, 24.

¶ 42 While the People contend that we can analyze the harshness of the penalty on appeal, we decline to do so. Conducting such an analysis requires factual determinations that trial courts are "uniquely suited" to make. *Wells-Yates*, ¶ 75 (quoting *People v. Gaskins*, 825 P.2d 30, 35 (Colo. 1992)). Moreover, neither of the

parties has addressed in any detail Lucero's parole eligibility and how it affects the harshness of his sentence.

¶ 43 Accordingly, we remand the case for the trial court to conduct a new abbreviated proportionality review in accordance with the principles set forth in *Wells-Yates*.

## V. Restitution

¶ 44 Lucero further contends that the trial court reversibly erred by imposing restitution despite the prosecution's alleged lack of diligence in presenting restitution information to the court at the time of sentencing. We aren't persuaded.

### A. Additional Facts

¶ 45 At the sentencing hearing on July 1, 2022, the prosecutor asked to reserve restitution in order to "give [the victim] a chance to provide [his medical bills]." The court accordingly ordered restitution in an unknown amount and ordered the prosecution to file its motion for restitution within the statutory timeframe. The defense didn't object to the prosecutor's request or the court's order of restitution in an unknown amount.

¶ 46 On August 12, 2022, the prosecution filed a motion for restitution in the amount of $6,000 to the Victim Compensation

Fund for payments relating to the victim's lost employment. The referenced payment had been made to the victim two years earlier, and a "claim payment summary" had been printed the same day.

¶ 47 On August 16, 2022, the trial court ordered Lucero to file an objection to the prosecution's motion by August 30, or the motion would be deemed confessed. On August 31, with no objection having been filed, the court granted the motion.

## B. Waiver and Invited Error

¶ 48 As a preliminary matter, the People assert that Lucero waived this issue (or, alternatively, invited any error) when he failed to object at the time of sentencing to the prosecution's having more time to present restitution information and then again failed to object in response to the prosecution's later motion for restitution.

¶ 49 We review de novo whether a claim is waived or an error is invited. *Babcock v. People*, 2025 CO 26, ¶ 28; *People v. Becker*, 2014 COA 36, ¶ 20.

¶ 50 Waiver of a statutory right, as is argued here, "must be voluntary, but need not be knowing and intelligent." *People v. Roberson*, 2025 CO 30, ¶ 13 (quoting *Finney v. People*, 2014 CO 38, ¶ 16). Waiver may be explicit, such as "when a party expressly

20

abandons an existing right or privilege," or implied, such as "when a party engages in conduct that manifests an intent to relinquish a right or privilege or acts inconsistently with its assertion." *Forgette v. People*, 2023 CO 4, ¶ 28. Waiver extinguishes error and therefore any appellate review. *People v. Rediger*, 2018 CO 32, ¶ 40.

¶ 51 Under the invited error doctrine, a party may not complain about an error they invited or injected into the case but, instead, must abide by the consequences of their own acts. *Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002). Thus, if a party invites an error, they cannot raise the error on appeal. *Rediger*, ¶ 34.

¶ 52 Here, Lucero didn't explicitly or implicitly waive his statutory right to have the prosecution do its due diligence to present restitution information at sentencing. Nor did he invite any error in this regard. While he failed to object on multiple occasions — even when ordered to do so by the court — this failure, standing alone, doesn't constitute waiver or invited error. *See Phillips v. People*, 2019 CO 72, ¶ 21 ("mere failure to raise an issue" isn't sufficient to establish an unequivocal act or a clear manifestation of an intent to relinquish a claim, both of which are necessary to establish waiver); *Horton*, 43 P.3d at 619 n.9 ("merely failing to object" is "distinct"

from "[e]xpressly agreeing to conduct by the trial court or opposing party," which may establish invited error); *cf. Babcock*, ¶ 30 (the defendant waived his right to have the court determine the amount of restitution within ninety-one days where he requested a hearing date that fell after expiration of the deadline); *Roberson*, ¶ 17 (the defendant waived her right to have the court determine the amount of restitution within ninety-one days where she didn't object to the trial court's suggestion to hold a hearing outside that timeline and then requested four additional continuances of that hearing).

¶ 53    Without more, we conclude that while Lucero's actions equate to forfeiture, they don't amount to waiver or invited error. *See Rediger*, ¶¶ 34, 39-40 (distinguishing among the three doctrines).

### C.    Standard of Review and Applicable Law

¶ 54    Because Lucero's restitution claim is unpreserved, we ordinarily would review it for plain error and, thus, would reverse only if any error was both obvious and substantial. *See Hagos v. People*, 2012 CO 63, ¶ 14. But he also raises the claim under Crim. P. 35(a), and such a claim doesn't require preservation and may be raised for the first time on direct appeal. *See Fransua v. People*, 2019 CO 96, ¶ 13; *People v. Martinez Rubier*, 2024 COA 67, ¶ 23.

Accordingly, we review the trial court's interpretation of the restitution statute de novo, and we will not reverse if any error in interpreting and applying the statute was harmless. *See Martinez Rubier*, ¶¶ 23, 25, 48.

¶ 55 At the time of Lucero's sentencing, the restitution statute required that when a trial court ordered restitution at sentencing but left the amount open, the court had to resolve the amount within ninety-one days, absent an extension of time for good cause. § 18-1.3-603(1)(b), C.R.S. 2022; *People v. Weeks*, 2021 CO 75, ¶ 3.[1]

¶ 56 As pertinent here, the restitution statute also provided,

> The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims. Further, the prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction.

§ 18-1.3-603(2)(a), C.R.S. 2022. This provision required (and still requires) the prosecution to exercise reasonable diligence to

---

[1] The deadline is currently sixty-three days. *See* § 18-1.3-603(1)(b), C.R.S. 2025.

determine the amount of restitution and present it to the court at or before the sentencing hearing. *People v. Brassill*, 2024 COA 19, ¶ 30 (*cert. granted in part* Aug. 4, 2025).

### D. Analysis

¶ 57 We first note that the trial court was not deprived of its authority to order restitution because it entered the order within the statutory ninety-one-day deadline. *See Weeks*, ¶ 45; *Martinez Rubier*, ¶ 47; *Brassill*, ¶ 58.

¶ 58 It's not clear, based on the record before us, whether the prosecution failed to exercise reasonable diligence in gathering and presenting restitution information to the trial court by the time of sentencing. The prosecution may not have provided information about the $6,000 in lost employment at the time of sentencing because it hadn't conducted its due diligence as of that time. But it also may not have provided this information simply because it was working with the victim to obtain information about his medical bills and wanted to present all the restitution information at once. And we don't know what efforts the prosecution may have undertaken to obtain the medical bill information from the victim and whether those efforts were diligent. Thus, we cannot conclude

24

that the prosecutor's request to reserve the amount of restitution so that she could "give [the victim] a chance to provide [his medical bills]" necessarily demonstrates a lack of due diligence in acquiring and presenting restitution information by the time of sentencing.

¶ 59     Regardless, even if the trial court erred by allowing the prosecution to delay providing restitution information it could've obtained by the time of sentencing, Lucero hasn't established that any error was harmful. *See* Crim. P. 52(a) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). Specifically, Lucero hasn't articulated any prejudice created by the delay in the presentation of restitution information, such as any difference in his ability to respond to the particular amounts of restitution requested. *See Martinez Rubier*, ¶ 49 (trial court's error in extending the prosecution's deadline to submit restitution information was harmless because the defendant didn't argue that the delay caused him prejudice, such as by "hamper[ing] counsel's ability to challenge the alleged link between [the defendant's] actions and the damage [claimed] . . . or the reasonableness of the [amount requested]"). Nor did any error violate Lucero's due process rights, given that he received notice of

the requested amount of restitution and had an opportunity to object to it before the court ruled on it. *See id.*

¶ 60 We therefore decline to vacate the trial court's restitution order.

## VI. Cumulative Error

¶ 61 Lastly, Lucero contends that the cumulative effect of the alleged errors deprived him of a fair trial, thus requiring reversal of his convictions. We aren't persuaded.

¶ 62 Although a single irregularity in a criminal trial may be deemed harmless, "[n]umerous formal irregularities . . . may in the aggregate show the absence of a fair trial, in which event a reversal would be required." *People v. Sauser*, 2020 COA 174, ¶ 106 (alteration in original) (quoting *Howard-Walker v. People*, 2019 CO 69, ¶ 24). But this doctrine "requires that numerous errors be committed, not merely alleged." *Id.*; *accord People v. Rivas*, 77 P.3d 882, 893 (Colo. App. 2003) ("The cumulative error doctrine applies only if the trial court committed numerous errors, and mere assertions of error by the defendant are insufficient.").

¶ 63 Because we have identified only one error in this case, relating to the trial court's proportionality review, the doctrine doesn't apply.

## VII.  Disposition

¶ 64     The judgment is affirmed in part and reversed in part, and the case is remanded for the trial court to conduct a new abbreviated proportionality review.

JUDGE FREYRE and JUDGE MEIRINK concur.